GEORGE McELDON, by his next friend, MRS. MARY MUNCH,
    Appellants, v. FRANK E. DREW, and ALFRED L. DREW,
    Appellees.

**Negligence:** LIABILITY FOR SALE OF DANGEROUS SUBSTANCES TO IN-
1 FANTS. One who sells a dangerous article to a child whom he
    knows, by reason of youth and inexperience, to be an unfit person
    to intrust with it and who might innocently and ignorantly play
    with it to his injury is negligent, and in case injury so results is

liable therefor in damages. In the instant case the question of defendants' negligence in the sale of gunpowder to an infant was one of fact for the jury.

**Same:** CARE REQUIRED OF INFANTS: EVIDENCE. Generally the care required of an infant is that degree which children of the same age ordinarily exercise under like circumstances, taking into account the age, experience, capacity and understanding of the child. Under the evidence in the instant case the question of whether the plaintiff exercised such a degree of care, while attempting to explode gunpowder purchased of defendants, was one of fact to be submitted to the jury.

**Same:** PROXIMATE CAUSE. The question of whether defendants' negligence in selling gunpowder to plaintiff, an infant of twelve years, was the proximate cause of his injury was also for the jury.

*Appeal from Linn District Court.*— Hon. J. H. Preston, Judge.

Thursday, May 7, 1908.

Action at law, to recover damages growing out of the sale of some gunpowder to plaintiff McEldon. The trial court directed a verdict for defendants, and plaintiffs appeal. — *Reversed.*

*Lewis Heins* and *C. G. Watkins,* for appellants.

*Redmond & Stewart,* for appellees.

Deemer, J.— Defendants were conducting a store in the city of Cedar Rapids, in the year 1906, whereat they sold gunpowder and other explosives. At the time in question plaintiff was five days over twelve years of age. He was small of stature and inexperienced in the use of explosives. He was still wearing short trousers, and had never seen any one use gunpowder, save on the Fourth of July, 1905, and on the day of the accident in question. He had never used firearms of any sort, and a jury may have found that he did not have the ordinary experience of boys of his

age. On the 27th day of June, 1906, plaintiff saw some older and larger boys exploding powder in a tin can, and after watching them for a time, inquired as to where they had obtained the powder, and was informed that they had procured it from the defendants. Thereupon plaintiff went to defendants' store, and asked for ten cents worth of gunpowder, requesting that it be put up in two packages. His order was filled, and plaintiff returned to where the other boys were and attempted to imitate their performances. While so engaged, there was a premature explosion, causing the loss of one of plaintiff's eyes and other injuries, of which he complains. The record presents but two questions, and these are: (1) Was there enough evidence to take the case to a jury upon the question of defendants' negligence? and (2) was the question of plaintiff's contributory negligence for a jury or for the court, under the testimony adduced?

I. There is no statute of this State forbidding or regulating the sale of gunpowder; and if there be any negligence upon the part of the defendants, it might be founded upon some common-law obligation not to sell to persons of immature age or development. The common law imposes upon every one the duty of so using and disposing of his property as not to injure the person or property of another, and if one sells a dangerous article to a child whom he knows to be, by reason of his youth and inexperience, unfit to be trusted with it, and who probably might innocently and ignorantly play with it to his own injury, and injury does in fact result, he is liable in damages therefor. The leading case on this subject is *Dixon v. Bell,* 1 Stark. 287, s. c. 5 Maule & S. 198, where defendant sent a young maid servant for a loaded gun, whom he knew to be too young and an unfit person to be intrusted with the care and custody of it, and who carelessly and improperly shot the gun at and into the face of plaintiff's minor son. It was held that the question of defendant's negligence was for a jury, and an instruction to the effect that, if the

1. NEGLIGENCE: liability for sale of dangerous substances to infants.

jury were of opinion that the instrument in such a state ought not to have been intrusted to such a person, plaintiff would be entitled to a verdict was approved. The same rule was adopted in *Carter v. Towne,* 98 Mass. 567 (96 Am. Dec. 682), and *Binford v. Johnson,* 82 Ind. 426 (42 Am. Rep. 508). In the *Dixon* case the servant was a mulatto girl, thirteen or fourteen years of age. The question of defendant's negligence was manifestly one of fact for the jury.

II.   Bearing upon the issue of plaintiff's contributory negligence, is the following from the testimony of the plaintiff:

I took the powder home, and met two boys, and we went down to the brewery, and we met another boy, Fred Trego. He got me the can and nail, and we put a hole in it, and then we put a fire cracker fuse in it, then powder, and then paper, and then some sand to keep it in there. As I went to strike a match, the spark flew on the fuse there, and just as I stooped over it, it flew up and hit me in the eye. Q. What did you go down there to get powder for? A. I seen some bigger boys do it, and I went and did it, too. . Q. How many times did you see the bigger boys shoot it off? A. They were shooting it off the year before up near our house, and the same day before I got the powder, why there was Theodore Nesper shooting it off, on Seventh street and D avenue aside of the brewery. They were shooting it in a can. It was in the afternoon. I don't know how many times they shot it off. I just went past there, and I seen them. I asked them where they got it, and he said at Drew's and I said before that, ' They don't sell it any place else, do they? ' Theodore Nesper and a little boy by the name of Winke was there shooting this can of gunpowder. I saw them shoot it twice while I was there. The year before, the shooting was up on A avenue and Eighth street near our house. Walter Barlow was shooting it. He had a can. Q. How did they shoot it? just tell the jury. A. The same way, put it. They had a hole in the top of the can, and took a fire cracker fuse, and put it in there, and then put powder in, then put paper so it wouldn't go out, and then put sand in it so as to keep it there, then put a little around the top — a little

2. SAME: care required of infants: evidence.

powder around the top. And they light thè fuse with a match. They used fuse out of one of these little fire crackers. Q. Did you ever see any one shoot these cans other times than that? A. No, sir. That is the only time I ever sàw them shoot. The year before they shot it four or five times. When I got the powder, I went up near the slough, near the brewery. The can that they used there the year before was a regular corn can, a tomato can, a tin can. They put a hole in it with a nail, just big enough for the fuse to go in, or the fire cracker to go in, and they put in powder, and then paper to keep it in there, and then sand on top of the paper. They put powder in cans, and then put paper, and put sand, and turned it over. Then a little powder on top where the fuse is, then light the fuse. Q. When they lit the fuse, what did they do then? A. The can would go away up in the air. Q. But what did they do when they lit the fuse? A. Just stand over to the side. I saw them do that four or five times. They would go back some 10 feet. They would light the fuse, and then step back some 10 feet, and the can would go up in the air. The day before I bought the powder, Theodore Nesper and Will Winke were shooting it in the same way. When I got the powder, I didn't go home with it. I was going down Seventh street, and met the boys. I was looking for a can to put it in, and they got me a can. Van Norman and Sam Moore went along with us. When we got the can, we went down by the slough. We shot the can off three times, and then went over to the Illinois Central track, and we shot it off over there two or three times. We put in fuse, and put in some powder, and then paper, and then sand. And some powder around the top, and lit it. We turned it over before we lit it. Q. When you lit it, did you jump back? A. Yes, sir. About the same distance as the boy did a year before, some 10 or 12 feet. The can would go up in the air. We did that the same way twice down to the brewery, then we went up to the Illinois Central track, and did it the same way. The last time the can struck me in the face. The last time we loaded it the same way we always did. Q. How far did you run away from it before it exploded? A. I lit it, struck a match, and a spark flew on it, and just as I went over to light it and it flew up and hit me in the face. Q. When you struck your match, and the head of it flew on it?

A. Yes, sir.   Q. Then it exploded, before you got down to light? A. Yes, sir.   Q. What were you striking the match on? A. On the side of my pants.   Q. And you were close to the can? A. Yes, sir.   Q. And the lighting of the match threw a spark on the powder and exploded it before you really had it lit, is that it? A. Yes, sir. I was right over the can when it flew up. I was just about to light it.   Q. Had you ever bought powder before this time? A. No, sir. I never had any powder before this. I never seen anybody use any powder other than I told about the boys shooting up the can. I have no firearms. I never use any firearms.

In this connection it must be remembered that plaintiff was but five days over twelve years of age. The general rule, with reference to the care required of an infant, is that degree which children of the same age ordinarily exercise under the same circumstances, taking into account the age, experience, capacity, and understanding of the child. *Fishburn v. Railroad,* 127 Iowa, 483.

Assimilating the rule which applies in criminal cases to civil ones, it has been held that children under seven years of age are incapable of contributory negligence as a matter of law, and that children between seven and fourteen are presumed incapable of contributory negligence, although the contrary may be shown. We seem to be committed to this rule, at least to a limited extent. See *Doggett v. C., B. & Q. R. R.,* 134 Iowa, 690. Although we have also affirmed the doctrine that even children are bound to exercise that degree of care which children of the same age ordinarily exercise under similar circumstances, if the doctrine of presumption applies, then the case was clearly one for a jury; the presumption standing as sufficient until met by testimony from the defendant. If the other rule obtains, we still think the question was one of fact for a jury, rather than of law for the court. The testimony tended to show that plaintiff was simply imitating the older boys with whom he was at play; that he did not realize or comprehend the dangers incident

to the explosion of the powder or to the method whereby it was being accomplished. The discharge was due to a spark from the lighted match, or to one flying from the match as it was being scratched for the purpose of ignition. This danger does not seem to have been apprehended by plaintiff, and in any view of the case we think it was for the jury to say whether or not plaintiff was in the exercise of that degree of care which children of his age ordinarily exercised under like circumstances, considering his age, experience, capacity, and understanding. *Bromberg v. Evans Laundry Co.,* 134 Iowa, 38. It must be a strong case to justify a court in holding, as a matter of law, that a child twelve years of age is guilty of contributory negligence.

III. One other proposition is mooted by appellees, and that is that plaintiff's act in setting off the powder in the manner he did was an independent, intervening cause for 3. SAME: proxi-mate cause. which defendant is not responsible. There is nothing in this proposition. Of course, if the case is submitted to a jury, it must find that defendant's wrong was the proximate cause of the injury. There is ample evidence to take the case to a jury upon that proposition.

The trial court was in error in directing a verdict, and the judgment must be, and it is, *reversed.*