CHARLES HENNINGSEN, JR., an Infant, by CHARLES HENNINGSEN, Guardian ad Litem, and Another, Plaintiffs, *v.* WILLIAM MARKOWITZ, Defendant.

Supreme Court, New York County, July 19, 1928.

Negligence — persons liable — action to recover for injuries suffered by infant plaintiff when he was shot in eye by air rifle — defendant sold air rifle and ammunition therefor to boy under sixteen years of age, in violation of Penal Law, § 1896 — boy's mother hid gun but six months later boy discovered it — boy and companions indulged in target practice — one of companions, using ammunition sold by defendant, fired shot which injured infant plaintiff — defendant is liable.

The infant plaintiff was shot in the eye by an air rifle. The defendant sold the rifle and ammunition therefor to a boy thirteen years of age, in violation of section 1896 of the Penal Law. The boy took the rifle home and, under instructions from his mother, returned to the defendant's store and demanded a refund of the purchase price on the surrender of the rifle. The defendant refused to take back the rifle. The boy's mother then hid the rifle, but about six months thereafter the boy discovered it and with some companions indulged in target practice. One of his companions fired the shot, using ammunition sold by defendant, which injured the infant plaintiff. The violation of the statute by the defendant gives rise to the cause of action and the defendant is liable. The fact that the shot was fired by a companion of the boy, who was under the age of sixteen, who purchased the gun does not relieve the defendant, for it may be said that he must have anticipated the use of the gun by companions of the boy who purchased it.

Nor does the fact that the accident did not occur until some six months after the sale relieve the defendant from the consequences of his illegal act, since it appears that both the purchaser and the boy who fired the shot were, at the time of the accident, within the prohibited age.

The act of the mother of the boy in hiding the gun does not relieve the defendant, for his wrongdoing continued to be active, notwithstanding the temporary interruption of possession by the act of the boy's mother.

ACTIONS to recover damages for personal injuries and loss of services.

*Charles J. Herson,* for the plaintiffs.

*David I. Shapiro* [*Joseph L. Stein* of counsel], for the defendant.

SHERMAN, J. The complaint unites the infant's cause of action for damages for personal injuries with his father's action for damages for loss of his services. The issues were submitted, under the usual stipulation, to the court without a jury. A few days before Christmas, 1924, Richard Kevans, then thirteen years of age, entered defendant's store and purchased from defendant personally an air rifle and B B shot to be used as ammunition. In making this sale, defendant violated section 1896 of the Penal Law (as

amd. by Laws of 1911, chap. 195), which forbids the sale to an infant under the age of sixteen of dangerous weapons, including specifically an air rifle and ammunition therefor; the seller is guilty of a misdemeanor. The possession of the rifle by such a purchaser under subdivision 3 of section 1897 makes the infant a " juvenile delinquent," subject to punishment as such.

Richard took his purchases home where his mother denied him the right to keep or use them and instructed him to take them back and get a refund of the purchase money. He thereupon went to defendant's store, offered to return the gun and ammunition for the purchase price, and defendant refused to accede to this offer. His mother, upon Richard's return to his home, took the gun from him with the intent to keep it until he should have reached a riper age. Richard, discovering its whereabouts in June, 1925, obtained possession and with a playmate of like age, Emmerich, went into the cellar of a neighboring house and began to shoot at a paper board target hung over an aperture in the cellar door, each taking turns at shooting. During this contest, his playmate fired a shot through the target which struck the infant plaintiff, then seven years of age, in the eye, destroying the sight of his left eye. This child had been playing on the steps leading from the street to the cellar. Defendant was later arrested and convicted in the Court of Special Sessions of a violation of section 1896 of the Penal Law. Defendant testified that the sale was not made to Richard but to Richard's sister; this story is clearly false and evinces a transparent effort to escape from the consequences of an act which he knew to be wrongful when committed. Defendant made the sale in willful defiance of the statute.

The foregoing facts having been found, will they suffice to support a verdict in plaintiff's favor? That the violation of the statute gives rise to the cause of action cannot be gainsaid. (*Marino* v. *Lehmaier*, 173 N. Y. 530; *Amberg* v. *Kinley*, 214 id. 531.) A question of proximate cause is presented, as to whether the intervening act of Mrs. Kevans broke the force of causation so as to relieve defendant of liability. Mrs. Kevans, of course, had the right as Richard's mother to reduce this air rifle to her own possession and thereby prevent her infant son from violating the statute by its continued possession. Does her ineffectual effort to prevent damage from defendant's wrongful act relieve the defendant from the legal consequence of his conduct? Does the fact that Richard's playmate fired the damaging shot save defendant from liability? Or, broadly speaking, was the act of the defendant such an active force that it was a direct cause of the injury? The legislative purpose in enacting these sections of the Penal Law is manifest.

It was to prevent just such an occurrence as here happened. The likelihood that an immature youth would be reckless in using a dangerous weapon so that persons might be struck and injured by a missile was one of the probable consequences, to avert which the Legislature enacted these provisions of the Penal Law.

In this view, there can be no doubt that the defendant is liable for the proximate results of this tortious act. There are some cases which enforce liability under kindred circumstances. (*Fowell* v. *Grafton*, 22 Ont. L. R. 550; *Dixon* v. *Bell*, 5 M. & S. 198.)

Nor should the fact that the shot was fired by a playmate of the purchaser, also an infant, whose possession of the gun was in violation of statute, operate to relieve defendant. That immature boys would participate in the use of the weapon was reasonably to be expected from the possession of it by a boy under the age of sixteen. This use by other boys was a proximate and foreseeable consequence of the sale. Such is the nature of youth, that the sale of a gun to one boy necessarily forecasts the probability that it will be used in some form of youthful sport or activity, in which others of like age will engage. Nor does the mere element of time — that is, the intervention of a period of approximately six months after sale before one of the shots sold by defendant found lodgment and caused injury — relieve defendant from the consequences of his act where the purchaser and the boy who fired the shot were both at that time of an age within the prohibition. An extended investigation of the cases and of the legal articles bearing upon these questions has revealed no precedent. They contain nothing, properly considered, which should operate to require a judgment for defendant. The most serious question presented, however, is whether or not the conduct of Richard's mother does, as a matter of law, rescue defendant. It is urged that the possession by Mrs. Kevans, being a legal possession, brought to an end the incidence and effect of defendant's tort. It is intimated that while defendant would have been liable if the gun had been merely laid aside and after a period of six months used by these boys, Mrs. Kevans' possession during that period of time required an additional act on the part of Richard to bring it again into his possession, and that the force of causation was thereby broken. The literature on the subject of proximate cause is large. (See Green's Rationale of Proximate Cause; Legal Cause, by Professor Edgerton, 72 U. of P. Law Rev. 349, 356; The Proximate Consequences of an Act, by Professor Beale, 33 Harv. Law Rev. 633.) Many cases are considered by those authors and various problems based upon the invention of unique states of fact are discussed. The conclusion of Professor Beale (33 Harv. Law Rev. 633, 651) has been fre-

quently cited as a concise statement of a governing rule, viz.: " On the other hand, where defendant's active force has come to rest in a position of apparent safety, the court will follow it no longer; if some new force later combines with this condition to create harm, the result is remote from defendant's act."

Here in my judgment the active force did not in legal contemplation come to rest. Defendant's wrongdoing continued to be potentially active so long and whenever the infant purchaser obtained access to the dangerous implement, constituting in itself a force which defendant had set in motion. The two elements were the boy's eagerness to possess and use the dangerous weapon, and the defendant's wrongful act which made that desire an effective source of danger to others. Both have persisted. An ineffectual check did not bring them to rest. The force continued operative and capable of producing damage without the necessity of any other new force combining therewith. In *Pittsburg Reduction Co.* v. *Horton* (87 Ark. 576; 18 L. R. A. [N. S.] 905) the dynamite caps were carried by the boy with his mother's permission. A new agency was then established and the boy's possession of the explosive was referable to that permission and not to the original taking. This marks the distinction; for here the possession, use and damage are consequent upon the original sale.

If it be urged that Mrs. Kevans owed a duty to prevent her infant son from violating the statute which forbade his possession of the dangerous weapon, it cannot be claimed that she owed any duty whatsoever to the defendant. The argument carries with it the necessary conclusion that if Mrs. Kevans owed such a duty, in the eye of the law, she would become subject to liability for a failure adequately to perform it. Therefore, if in her laudable desire to take possession of the gun, as here, and keep it until her son had attained the age of sixteen years and entitled to its use, she would by this reasoning have subjected herself to liability to any one injured by its use while in her son's possession if she knew it or should have known and prevented its use, she, and not defendant, might be answerable for the damage which she sought to prevent. A view which denies redress against this defendant on such a ground is highly legalistic and depends upon the quality of the mother's possession, and the creation of a parental obligation. It would enable violators of this statute to obtain immunity from liability as soon as a boy's parent knew that his son had bought a gun. The law does not in my judgment give absolution from liability to the author of a wrong because of such a temporary exercise of possession. Under these circumstances it would be erroneous to

declare the chain of causation broken, when in fact in my judgment it was not.

In *Hartnett* v. *Boston Store* (265 Ill. 331) the court took a very narrow view of the ordinance and found for defendant. The sale of the gun without ammunition was not regarded as a sufficient proximate cause of the injury. Here the statute forbade the sale of both gun and ammunition and defendant sold both to the infant. The declaration in *Carter* v. *Towne* (103 Mass. 507) had been held sufficient upon demurrer, but the proof disclosed a different case. The can of gunpowder unlawfully sold to the infant was in the possession of the infant's aunt and mother and they exercising control gave it to the infant to fire.

Other cases cited by defendant deal with the common-law liability of parents in permitting a minor child to have a dangerous weapon (*Hagerty* v. *Powers*, 66 Cal. 368), with situations where there was no statutory inhibition (*Chaddock* v. *Tabor*, 115 Mich. 27), or where the courts have adopted a rule limiting the consequences of successive causations more or less intimately related, as in the case of a spreading fire. (*Ryan* v. *N. Y. Central R. R. Co.*, 35 N. Y. 210.) These decisions do not apply here, where the injury to the infant plaintiff was the direct foreseeable and probable consequence of defendant's violation of the statute. Under the stipulation I direct verdicts against defendant, viz., in favor of the infant, Charles Henningsen, Jr., for $20,000, and in favor of his father, Charles Henningsen, for $3,000 for loss of services.