FRANCIS O. COTÉ, *by his next friend, v.* SEARS, ROEBUCK & Co.

LOUIS COTÉ *v.* SAME.

*Sullivan & Sullivan (Mr. Frederic Parker* orally), for the plaintiffs.

*Wyman, Starr, Booth & Wadleigh (Mr. Ralph E. Langdell* orally), for the defendant.

BRANCH, J.  1.  The motions for a nonsuit and a directed verdict were properly denied.  Upon the evidence submitted to the jury the following facts were findable.  December 10, 1930, the plaintiff Francis, then a boy twelve years old, purchased at the defendant's store in Manchester a box of twenty-two caliber "short" cartridges. Later in the same day he loaded a revolver belonging to a playmate with one of these cartridges, and shoved the loaded gun inside his belt.  Thereafter when he attempted to pull it out the cartridge exploded inflicting the injuries complained of.  The shooting took place in a vacant lot in the city of Manchester.  A rule of the defendant's store forbade the sale of ammunition to minors.  No warnings or instructions were given to the plaintiff when he made the purchase.

The defendant denied that the cartridges were bought at its store.

In this state of the proof the court submitted to the jury the following issue: "Is the sale of shells to a young man of plaintiff's age and intelligence without warning of dangers attendant to their use, if there are such dangers, and without proper instructions as to their use, if instructions are necessary, a negligent thing to do?"  If there was any inaccuracy in this statement of the decisive issue in the case it did not operate to the detriment of the defendant.  The likelihood that explosives placed in the hands of children will result in injury to them or to third persons is so obvious that negligence might well be

predicated upon the sale of cartridges to a twelve year old boy even if an attempt to give instructions and warnings had been made. This seems like a self evident proposition, but if proof were considered necessary it was furnished by the evidence above referred to that a rule of the defendant's store forbade the sale of ammunition to minors; and by the testimony of the defendant's local manager that a minor should not have ammunition "because you can't tell what he is going to do with it"; and that it is "reasonable to expect that a twelve and a half year old boy may accidentally discharge a revolver and hurt either himself or a companion."

In the defendant's brief we read that "as a matter of law . . . a merchant would be justified in assuming that a boy in the plaintiff's position, who purchased cartridges, would have a knowledge of their properties and proper use." The negative of this statement would be nearer the truth. In the handling of firearms judgment, skill and experience are factors of safety quite as important as mere knowledge of danger and it cannot be assumed that boys twelve years old have these qualifications.

Since the defendant might be found at fault for placing the cartridges in the hands of the plaintiff even if warnings and instructions had been given, the argument that the plaintiff's own testimony leaves no room for doubt "that he was fully cognizant of all that defendants are charged with failure to tell him," would be wholly inconclusive if otherwise well founded in fact and in law. It should be pointed out, however, that this argument involves two misconceptions as to the law and has no sound basis in fact.

The defendant erroneously assumes that the rule laid down in *Harlow* v. *Leclair*, 82 N. H. 506, to the effect that a party is bound by his testimony in court, requires that all the conflicting assertions which experienced counsel may elicit from a twelve year old boy in regard to his knowledge at a particular time shall be taken as conclusively establishing the facts most unfavorable to him which are stated therein. The case of *Harlow* v. *Leclair* stands for no such principle. That case had to do with "a man of mature years" who was assumed to have "average intelligence" and whose testimony was "clear and unequivocal." The rule there enunciated applies to such persons and to such testimony. It has no application to children of immature mentality whose testimony abounds in equivocations and qualifications.

In support of its argument the defendant refers to numerous statements contained in the deposition of the plaintiff which were read to

the jury "as evidence of the facts" stated therein upon the theory that they were "the admissions of a party." The defendant seems to assume that for the purpose of determining whether a party has "sworn himself out of court" (*Harlow* v. *Leclair, supra,* 511) depositions taken before trial are to be taken as conclusively establishing the truth of any admissions contained therein. This is not the law. When the deponent is present in court and testifies, his deposition becomes inadmissible as testimony. It is "incompetent as substantive evidence." *Profile &c. Co.* v. *Bickford,* 72 N. H. 73, 75; *Phoenix &c. Co.* v. *Clark,* 58 N. H. 164; *Hayward* v. *Barron,* 38 N. H. 366; *Clough* v. *Bowman,* 15 N. H. 504, 515. The theory of the deposition statutes has always been that a deposition was "never to be used if the witness were produced in court . . . by the opposite party." *Hayward* v. *Barron, supra,* 370. Depositions belong to the "class of secondary evidence" (*Taylor* v. *Thomas,* 77 N. H. 410, 412) which is admissible only when the *viva voce* testimony of the deponent is not available. *Hayward* v. *Barron, supra.*

When the deponent testifies, his deposition may be used (1) as evidence of contradictions, and (2) when the deponent is a party, as evidence of extra-judicial declarations or admissions, (*Profile &c. Co.* v. *Bickford, supra; Phoenix &c. Co.* v. *Clark, supra*) but they gain no added dignity because of their character as depositions. It is held to be "immaterial whether such declarations were proved by oral testimony of one who heard them, or by the defendant's signed statement in the form of a deposition." The rule of *Harlow* v. *Leclair, supra,* is in effect that a party must generally "stand or fall by his own testimony," but it has never been suggested that parties are irrevocably bound by the force of their extra-judicial declarations or admissions.

Finally it should be stated that an impartial reading of the plaintiff's testimony leaves much room for doubt as to how far he really comprehended the dangers incident to the use of a revolver, particularly in regard to the possibility of an accidental or premature discharge, while at the same time it demonstrates his total lack of experience, skill and judgment in the use of such a weapon.

The defendant's exceptions to the allowance of the plaintiff's argument and to the charge remain to be considered.

2. The first witness called by the defendant was a police officer of Manchester who testified that he investigated the shooting of the Coté boy and took possession of the gun and cartridges, which he later disposed of by throwing them into the Merrimack river. He

testified that at the time of the shooting and at the time of the trial, plaintiff's counsel, Mr. Sullivan, was county solicitor for Hillsborough county. Mr. Sullivan thereupon inquired, "What is the difference if I am County Solicitor?" and the court ruled as follows: "It may be stricken out of the record; the jury will pay no attention to that." No exception was taken to this ruling and no further reference to the matter appears in the testimony. A previous witness had testified that he signed a deposition at "the County Solicitor's office."

Commenting on these proceedings in his argument to the jury, plaintiff's counsel said, "Did you hear anything on my brother's part following that line of talk? Oh no, he sat down, caught in an act not becoming a gentleman and unworthy of men in their profession." To this argument the defendant objected and the court ordered that an exception be noted. Plaintiff's counsel then continued: "You saw them slink away from that and never again refer to it until this morning."

It is now argued that in view of the court's order that "it may be stricken out of the record," "further permissive use of the excluded material is error." This position is not well taken. In this case, as in *State* v. *Lajoie*, 84 N. H. 147, "counsel was calling the attention of the jury not to a piece of testimony, but to an incident of the trial." The attempt of defendant's counsel to make capital in some way out of the official connection of plaintiff's counsel with the police investigation of the case, the disapproval of this attempt by the court as indicated by its somewhat indefinite ruling and the subsequent conduct of the defendant's counsel were all occurrences which transpired in the presence of the jury and in regard to which argument was not improper. *State* v. *Lajoie*, *supra*. From the language of the argument above quoted it may be inferred that defendant's counsel had previously availed himself of this privilege. Although it may have been of scant assistance to the jury in coming to a just verdict, plaintiff's counsel was justified in replying to references to his professional conduct which obviously were not designed to be complimentary to him or helpful to his client. Some comment being permissible, the language used was not in itself legally objectionable.

3. There was testimony that the clerks in the defendant's store worked on "commission and salary." Subject to the defendant's exception plaintiff's counsel was permitted to argue as follows: "These fellows work on commission; their pay at the end of the week depends pretty much on what they sell. Perhaps that has something to do with selling ammunition to a boy, even if the rule of the company

says they shall not sell to youngsters." No valid objection to this argument has been suggested by the defendant and none occurs to us.

4. The statutes provide that "no person shall, within the compact part of a town, fire or discharge any cannon, gun, pistol or other firearms . . . ." P. L., c. 378, s. 6. One of the controverted questions at the trial was whether the revolver in question was discharged within "the compact part" of the city of Manchester. The court instructed the jury as follows: " 'Compact part' in this statute means such part of the city so inhabited in the surrounding vicinity as to render it dangerous to the public to have firearms discharged where used. So that it will be for you to determine, having in mind the place where the boy was at the time the accident happened, the size of the revolver and shell, the surrounding vicinity as described here in court in the evidence, and also as viewed by you, and determine whether this is a compact part of the city or not. If a compact part of the city, the principle of law I will give you shortly will apply. If not a compact part of the city, this statutory regulation becomes immaterial and is not present in this case." To the foregoing instruction the defendant excepted as follows: "The defendant also excepts to the instruction of the Court which permits the jury to consider the size of the revolver and shells in fixing (sic) on the question as to whether the use of the revolver was in the compact part of the town or not."

No exceptions having been taken to the court's definition of the term "compact part" it became the unquestioned law of the trial that it means a part of the city "so inhabited in the surrounding vicinity as to render it dangerous to the public to have firearms discharged where used." Obviously under this definition a locality might be "so inhabited" as to render dangerous the discharge of a "cannon" or a high powered rifle when the firing of a revolver of small caliber like the one in question would cause no danger to the public. Whether the discharge of a particular weapon created a danger which the statute was designed to guard against would in each case be a question of fact. If the court's definition was correct, in regard to which we express no opinion, no fault can be found with the subsequent action of the court in leaving it to the jury to say whether the vacant lot where the shooting took place was so inhabited as to render dangerous to the public a discharge of the revolver in question. If the defendant had wished to raise the questions now argued, exception should have been taken to the court's construction of the statute. The exception which it did take is unavailing for that purpose. This

244

conclusion renders it unnecessary for us to consider the other arguments of the plaintiff, (1) that the evidence conclusively demonstrates that the plaintiff "did not know what he did at the time of the accident, and that a jury could not find that it was more probable than not that the plaintiff fired or discharged the revolver within the meaning of the statute," (2) that the purpose of the statute was not to protect the public against danger from the discharge of firearms, but to prevent "certain things done for the sake of disturbance and excitement." *Honnon* v. *Kerr*, 85 N. H. 386, 387, and (3) that violation of the statute, if proved, was not causal.

No consideration has been given to the defendant's remaining exceptions which have not been argued and are understood to be waived.

*Judgment on the verdict.*

All concurred.