Sidney RUBIN d/b/a Gold's Pawn
Shop and Steven Rubin,
Appellants (Defendants),

v.

Doris Jean JOHNSON, as Administratrix
of the Estate of David A. Johnson,
Appellee (Plaintiff).

No. 72A01–8906–CV–00214.

Court of Appeals of Indiana,
First District.

Feb. 19, 1990.

James E. Bourne, Richard A. Bierly, Samuel A. Day, Wyatt, Tarrant, Combs & Orbison, New Albany, for appellants.

Edwin S. Sedwick, Sedwick & Sedwick, Frank E. Ballard, Jr., Jeffersonville, for appellee.

RATLIFF, Chief Judge.

## STATEMENT OF CASE

Sidney Rubin and his son, Steve Rubin, bring this interlocutory appeal in conjunction with their family-owned business, Gold's Pawn Shop,[1] seeking review of the trial court's denial of Rubin's motion for summary judgment. Rubin sought summary judgment in a wrongful death suit filed by Doris Johnson as administrator of the estate of David Johnson, alleging that Rubin negligently transferred a firearm to a mentally incompetent individual who later fatally shot David Johnson. We affirm.

## FACTS

Michael Campbell was thirty-four (34) years old in 1986 and resided with his mother in Jeffersonville, Indiana. In October, 1978, Campbell was committed to Life Spring Mental Health and Guidance Center located in Jeffersonville pursuant to an involuntary 72–hour commitment. Campbell was treated on an out-patient basis after being diagnosed as a paranoid schizophrenic. As of 1986, Campbell was receiving social security benefits due to his mental instability.

On May 31, 1986, Michael Campbell entered Gold's Pawn Shop to purchase a gun. Campbell had frequented the shop on prior occasions to purchase items to add to his collection of "strange things" which included an acorn the size of a man's fist. Campbell stated during depositions that he felt comfortable at the pawn shop, as if he were among friends. He was assisted in

---

1. The appellants will be referred to collectively as "Rubin" throughout this opinion.

purchasing a gun by Steve Rubin who completed the necessary state forms for Campbell's purchase of an Intratec 9 mm.

At some point during the sale, Steve Rubin asked Campbell why he wanted such a weapon. Campbell told Rubin he wanted the gun to hunt deer and groundhogs, and possibly for target practice. The affidavit of firearms expert James Looney indicates that the Intratec 9 mm was unsuitable for hunting purposes. There is also some indication that Campbell may have commented that the "streets were getting bad," before purchasing the gun.[2] Appellee's Brief at 16. However, Steve Rubin stated that Campbell did not act in any way strange during the purchase and was able to answer the questions put forth by Rubin pursuant to the State form in a coherent manner.

On June 7, 1986, Campbell was allowed to have possession of the gun since neither the State Police nor the Jeffersonville Police had informed Gold's Pawn Shop not to release the gun. At this time Campbell completed the necessary federal form which included a question asking whether or not the purchaser had ever been adjudged mentally defective or been committed to a mental institution. Campbell answered this question negatively.

On December 9, 1986, approximately six (6) months after purchasing the gun at Gold's Pawn Shop, Campbell shot and killed David Johnson with the Intratec 9 mm. Campbell subsequently was found guilty but mentally ill of the offense of murder and was sentenced to thirty-two (32) years imprisonment. *See Campbell v. State* (1989), Ind., 536 N.E.2d 285.

On March 10, 1988, Doris Johnson, as the administrator of the estate of David Johnson, filed a complaint for wrongful death against Gold's Pawn Shop, and Sidney and Steven Rubin. Johnson alleged that Rubin knowingly transferred a firearm to Campbell whom Rubin knew or reasonably should have known was of unsound mind. On June 17, 1989, Rubin filed a motion for summary judgment. After a series of amended pleadings, the motion was set for hearing on March 16, 1989, and on May 19, 1989, the trial court certified for appeal its order denying Rubin's motion for summary judgment, and Rubin filed a praecipe with this court. On July 14, 1989, Rubin's interlocutory appeal was accepted for review.

### ISSUES

Rubin claims that the trial court erred in denying summary judgment in favor of the pawn shop and its owner and employee. To determine the validity of Rubin's claim, the following issues must be resolved:

1. Whether the trial court properly admitted and considered the affidavit of James Looney;

2. Whether the evidence submitted to the trial court was sufficient to merit a jury determination of whether Rubin committed negligence per se in selling the Intratec 9 mm to Campbell; and

3. Whether, assuming negligence per se, evidence sufficient to defeat Rubin's motion for summary judgment was presented concerning the issue of whether

---

2. SEDWICK: Q And do you recall mentioning society being what it was?

ATTORNEY BOURNE: You mean on this occasion?

ATTORNEY SEDWICK: Yes. Quit interrupting me. The one—he knows what I'm talking about.

ATTORNEY BOURNE: I don't know what you are talking about. You mean on the occasion that he bought this gun or just any time?

THE WITNESS: I might have said something about that, yes.

BY MR. SEDWICK:

Q During the period of time that you were looking at this Intra Tec?

CAMPBELL: A Yes. If you want to know the deep-rooted meaning behind that I will tell you that it was because the gangs that were in my neighborhood, I felt for my mother, so I—I didn't expect to use it in any way, shape or form as far as violence goes, even at that point that I mentioned that the streets are getting bad.

Q So you recall stating to Steve Rubin that the streets were getting bad before you purchased the Intra Tec; is that what you are telling?

A I think so. I don't know for sure.

Record at 491–92.

Rubin's sale of the Intratec 9 mm to Campbell constituted the proximate cause of David Johnson's death.

### DISCUSSION AND DECISION

*Issue One*

Rubin first claims that the trial court erred in admitting and considering the affidavit of firearms expert, James Looney. According to Rubin, Looney's affidavit contains inadmissible conclusions concerning Campbell's mental condition. On this basis Rubin objects to the following statements made in Looney's affidavit:

25. That based upon your Affiant's review of Michael Campbell's Deposition, Steven Rubin and or Gold's Pawn Shop should not have sold the 9 mm Intratec, Model TEC–9, to Michael Campbell as Steve Rubin and/or Sidney Rubin d/b/a Gold's Pawn Shop should have been alerted to Michael Campbell's apparent unsoundness of mind;

26. That one of the reasons that the sale of said 9 mm Intratec, Model TEC–9, should not have occurred is due to Michael Campbell's informing Steven Rubin that he (Campbell) wanted to utilize said 9 mm Intratec for hunting deer and for hunting groundhogs;

27. That, additionally, one of the reasons that the sale of said 9 mm Intratec, Model TEC–9, should have not occurred to Michael Campbell is due to Michael Campbell's perception, which was verbalized to Steven Rubin, as to the problems being experienced by society;

28. That one of the other reasons the sale of said 9 mm Intratec, Model TEC–9, should not have occurred to Michael Campbell is due to Michael Campbell's prior contacts, and associations, with Steve Rubin and Gold's Pawn Shop which should have indicated, to Steve Rubin and/or Sidney Rubin d/b/a Gold's Pawn Shop that he (Michael Campbell) was of unsound mind;

29. That, in your Affiant's opinion, Steve Rubin and Sidney Rubin d/b/a Gold's Pawn Shop, should have gone further than merely obtaining negative answers to certain questions listed on form 4473 prior to the consummation of the sale of said 9 mm Intratec, Model TEC–9;

30. That your Affiant, as a seller of handguns and firearms, recognizes that he sells inherently dangerous items and that, therefore, your Affiant recognizes that a seller of such items should do more than having filled out, or filling out, the necessary forms for the transfer of a handgun and, at a bare minimum, should observe any potential buyer of a handgun for signs of mental deviance;

31. That based upon the review of Michael Campbell's Deposition, Steven Rubin and Sidney Rubin, d/b/a Gold's Pawn Shop had more than adequate opportunity to observe Michael Campbell and determine that he (Michael Campbell) exhibited signs of mental incompetence and mental deviance prior to the sale of the 9 mm handgun to Michael Campbell.

Record at 223–24.

█ In order to be used in a summary judgment proceeding, an affidavit must be made on personal knowledge, must set forth such facts as would be admissible in evidence and must affirmatively show that the affiant is competent to testify as to the matters stated therein. Mere assertion of conclusions of law or opinions in an affidavit will not suffice. Ind.Trial Rule 56(E); *Dedelow v. Rudd Equipment Corp.* (1984), Ind.App., 469 N.E.2d 1206, 1209; *Indiana University Hospitals v. Carter* (1983), Ind. App., 456 N.E.2d 1051, 1057. All portions of an affidavit which cannot be said to have been clearly based on personal knowledge must be stricken. *French v. Hickman Moving & Storage* (1980), Ind.App., 400 N.E.2d 1384, 1387. Rubin contends that Looney's statement that Campbell was of unsound mind was not based on Looney's personal knowledge. In support of this argument Rubin points out that Looney reviewed only the depositions of Steve and Sidney Rubin and Michael Campbell and the affidavits of Steve and Sidney Rubin, and at no time did Looney have personal contact with Campbell. Therefore, according to Rubin, statements number 25–31 of Looney's affidavit, reproduced above,

should have been disregarded by the trial court. Without citing pertinent case law, Rubin also indicates that as an expert in the sale of firearms, Looney was not qualified to relay his conclusions concerning the mental soundness of Campbell to the trial court.

■ In response to these arguments Johnson notes that Looney's affidavit was offered as an expert opinion. The standard for admissibility of expert opinion is whether that opinion will aid the jurors in understanding the facts. *Summers v. State* (1986), Ind.App., 495 N.E.2d 799, 803, *trans. denied.* In order to be admissible expert opinions must be preceded by a foundation establishing the witness' credentials. *Yang v. Stafford* (1987), Ind. App., 515 N.E.2d 1157, 1161, *trans. denied.*

■ In response to Rubin's first argument, it is our opinion that Looney's affidavit does not attempt to reach any ultimate conclusion concerning whether or not Campbell was actually incompetent at the time he purchased the gun from Rubin. Rather, Looney merely opines that given both Rubin and Campbell's versions of their past dealings and the actual sale, Rubin reasonably should have suspected that Campbell was mentally deficient and should have refused to sell Campbell the gun. In our opinion, Looney does not attempt to testify to events and conditions outside his personal knowledge. Furthermore, an expert may utilize hearsay in forming his opinion. *Public Service Indiana, Inc. v. Nichols* (1986), Ind.App., 494 N.E.2d 349, 357–58; *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148, 155. Therefore, given that Looney supports his conclusion that Rubin should not have sold a gun to Campbell by referring to specific signals which should have caused Rubin to suspect that Campbell was of unsound mind, we consider Looney's statements appropriate.

■ As to Rubin's attack on Looney's qualifications, we note that Looney's affidavit contained statements indicating that he had received training in determining when a would-be-purchaser should be denied the opportunity to buy a gun due to

characteristics which may be evidence of mental deficiency. Therefore, we deem it appropriate and hold that the trial court did not err in considering Looney's affidavit when deciding on Rubin's motion for summary judgment.

*Issue Two*

■ At this juncture we must stress that this is an appeal from the denial of a motion for summary judgment. When presented with a challenge to the trial court's ruling on a motion for summary judgment our standard of review is well settled: "We consider the contents of the pleadings, affidavits, answers to interrogatories, responses to requests for admissions, and depositions in a light most favorable to the non-moving party to determine whether any genuine issue of material fact exists, and whether the moving party is entitled to judgment as a matter of law." *Watson Rural Water Co. v. Indiana Cities Water Corp.* (1989), Ind.App., 540 N.E.2d 131, 132 (trans. pending). Summary judgment should not be used as an abbreviated trial and is generally inappropriate in negligence actions. *Jackson v. Warrum* (1989), Ind.App., 535 N.E.2d 1207, 1210. However, a defendant in a negligence action may obtain summary judgment by demonstrating that "the undisputed material facts negate at least one element of the plaintiff's claim." *Sanders v. Townsend* (1987), Ind.App., 509 N.E.2d 860, 862, *trans. denied.*

■ Rubin first argues that summary judgment should have been granted because, under Indiana law, Rubin owed no duty to David Johnson. We disagree. In order to prevail in a negligence action, the plaintiff must provide evidence sufficient to demonstrate the existence of all the requisite elements of a cause of action:

"Specifically, the plaintiff must establish (1) the existence of a duty owing from the defendant to the plaintiff, (2) the defendant's failure to conform its conduct to the requisite standard of care required by the relationship, and (3) inju-

ry to the plaintiff proximately resulting from such failure."

*Howard v. H.J. Ricks Construction Co.* (1987), Ind.App., 509 N.E.2d 201, 205, *trans. denied; also see Ralls v. Noble Roman's Inc.* (1986), Ind.App., 491 N.E.2d 205, 208, *trans. denied.* Rubin is correct in asserting that the first essential element of an actionable negligence claim is that the alleged tortfeasor be under a duty to do or refrain from doing a certain act. Whether a duty exists is a question of law. *Ralls,* Ind.App., 491 N.E.2d at 208. Duty may be predicated on common law principles of negligence[3] or on the violation of a statute.[4] The unexcused or unjustified violation of a duty proscribed by statute constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation. *Hodge v. Nor–Cen, Inc.* (1988), Ind. App., 527 N.E.2d 1157, 1160, *trans. denied.* Furthermore, where a statute is enacted to ensure the safety of others, its violation constitutes negligence per se. *Hetherton v. Sears Roebuck & Co.* (3rd Cir 1979), 593 F.2d 526, 529.

 The Indiana statutes regulating the transfer and possession of handguns were enacted by the legislature to protect the public from those who would use such weapons in a dangerous or irresponsible manner. *See Matthews v. State* (1957), 237 Ind. 677, 685–86, 148 N.E.2d 334, 338. (Purpose of Indiana gun control laws found to be maximum degree of control over criminal and careless use of certain firearms while still making such weapons available for protection purposes.); 1937 OP.IND.ATT'Y GEN NO. 242, (Purpose of the Firearms Act of 1935 found to be the prevention of unwanted distribution of firearms to irresponsible people and to those others not having adequate justification for possession of such weapons.) To further this purpose, certain restrictions were placed on the transfer of handguns as evidenced by Ind.Code § 35–47–2–7 which reads as follows:

> No person, except an individual acting within a parent-child or guardian-ward relationship shall sell, give, or in any other manner transfer the ownership of a handgun to any person under the age of eighteen (18). It is unlawful for a person to sell, give, or in any manner transfer the ownership or possession of a handgun to one who he has reasonable cause to believe:
>
> (1) has been convicted of a felony;
>
> (2) is a drug abuser;
>
> (3) is an alcohol abuser; or
>
> (4) is of unsound mind.[5]

Violation of this statute constitutes a class C felony, Ind.Code § 35–47–2–23, which carries a minimum sentence of two (2) years imprisonment, Ind.Code § 35–50–2–6, and the possible revocation of the gun dealer's license, Ind.Code § 35–47–2–15(d). The legislature's enactment of these statutory provisions reflects a strong public policy against entrusting certain irresponsible

---

**3.** Johnson claims that Rubin was under a common law duty to refrain from selling a handgun to a mentally incompetent individual such as Campbell. However, Johnson fails to articulate the source of such a duty and offers no cogent argument in support of this claim. Therefore, we consider Johnson's common law based claim waived for purposes of review. *See* Ind. Appellate Rules 8.3(A)(7) and (B). However, we note that other jurisdictions have found such a common law duty to exist based upon the concept of negligent entrustment and we do not preclude the possibility of future recovery on that basis by our opinion herein. *See Bernethy v. Walt Failor's, Inc.* (1982), 97 Wash.2d 929, 933–34, 653 P.2d 280, 282–83.

**4.** Rubin argues that insofaras Johnson relies on the alleged violation of a criminal statute, Ind.

Code § 35–47–2–7, as a basis for claiming damages, Johnson's claim must be dismissed because IC 35–47–2–7 does not create a private cause of action. However, Rubin misconstrues Johnson's claim. Rather than asserting that the Indiana gun control statute creates a private cause of action, Johnson simply relies on this statute to provide "a standard against which to measure [Rubin's] conduct for purposes of determining negligence." *Decker v. Gibson Products Co.* (11th Cir 1982) 679 F.2d 212, 214. Because Johnson's claim is negligence based, we needn't determine whether or not IC 35–47–2–7 creates a private cause of action.

**5.** I.C. 35–47–2–7 has since been amended, changing the term "unsound mind" as used in section (4) to "mentally incompetent."

and undependable individuals with hand-guns. The purpose of this policy is to safeguard the general public from the incompetent, irresponsible or criminal use of such weapons. Clearly, as a member of the general public, David Johnson was among the persons intended to be protected under I.C. 35–47–2–7.[6]

We next must determine, therefore, if David Johnson's murder was the type of harm sought to be avoided under IC 35–47–2–7. Given the purpose of the statute as stated above, we consider it equally clear that David Johnson's death, if brought about by a gun-wielding individual of doubtful mental competency, was exactly the risk of harm the legislature attempted to minimize in enacting I.C. 35–47–2–7. Therefore, providing that the evidence was sufficient to support a conclusion, that Rubin violated the statute, such a violation constitutes negligence per se.[7]

■ While the question of duty, whether based on common law or the violation of a statute, is a question of law, we consider the question of whether a statute has been violated, like the question of breach, to be reserved for the trier of fact. *See Thiele v. Faygo Beverage Inc.* (1986), Ind.App., 489 N.E.2d 562, 574, n. 4 *trans. denied; Petroski v. Northern Indiana Public Service Commission* (1976), 171 Ind.App. 14, 24, 354 N.E.2d 736, 744, *trans. denied.*

In the present case there is evidence that Campbell frequented Rubin's on several prior occasions and that Campbell often bought strange items from the pawn shop to add to his collection. There is also some indication that when Campbell purchased the weapon, he told Steve Rubin that he wanted the weapon to use for hunting deer and groundhogs. Firearms expert Looney stated that the Intratec 9 mm was completely unsuitable for such purposes. Furthermore, Campbell appears to have mentioned the deteriorating condition of society when he purchased the gun. In the opinion of Looney, Campbell's conduct and the prior course of dealing between Rubin and Campbell was such that Rubin reasonably

**6.** Johnson argues that Rubin also violated Ind. Code § 35–47–2–11(a)(1) which states:
"(a) It is the intent of this chapter that:
(1) all sale forms be completed by the transferee in the presence of the transferor."
Johnson contends that Rubin violated this statute in that Steve Rubin physically filled out the sale form in response to Campbell's answers to the questions put forth on the form, rather than having Campbell fill out the form himself. According to Johnson, Campbell's mental incompetency would have manifested itself more readily had Campbell been forced to physically complete the form. Johnson cites to Campbell's testimony wherein Campbell claimed that Steve Rubin never asked him whether or not he was mentally incompetent. Johnson notes that Campbell stated that he would not lie to his friends at the pawn shop in response to such a question. Therefore, according to Johnson, Rubin violated I.C. 35–47–2–11(a)(1).
We disagree. While the statute does require that the transferee complete the sale form, it does not require that the form be *personally* completed by the trasferee. We consider it sufficient for the transferee to provide the information requested on such forms. As for Steve Rubin's failure to ask whether or not Campbell was of sound mind, we find such an omission to be of no consequence since Campbell subsequently read and signed the sale form. The form contains a clause which states that it is against the laws of the State of Indiana to transfer a handgun to any person who is of unsound

mind. The signature section of the sale form states that the signatory affirms that delivery of the handgun to that individual does not conflict with state law. Therefore, in reading and signing the form, Campbell was made aware that transfer of a handgun to one who is mentally incompetent is illegal. Steve Rubin's failure to emphasize this point is of no consequence, particularly in light of the fact that while Campbell did state that he would not lie to his friends at the pawn shop if they questioned his sanity, Campbell indicated that he would assure them that he was not mentally incompetent. We hold that absent evidence of fraud or misrepresentation, Steve Rubin's failure to have Campbell personally complete the sale form does not constitute a violation of I.C. 35–47–2–11(a)(1).

**7.** For other cases holding that violation of a state gun control statute or the federal gun control act, found at 18 U.S.C. §§ 921, 929, constitutes negligence per se, see the following: *Decker,* 679 F.2d at 212; *Hetherton,* 593 F.2d at 526; *Crown v. Raymond* (1988), 159 Ariz. 87, 764 P.2d 1146; *Franco v. Bunyard* (1977), 261 Ark. 144, 547 S.W.2d 91; *West v. Mache of Cochran, Inc.* (1988), 187 Ga.App. 365, 370 S.E.2d 169; *cert. denied; Montgomery Ward & Co. v. Cooper* (1986), 177 Ga.App. 540, 339 S.E.2d 755, *cert. denied; Howard Bros. v. Penley* (1986), Miss., 492 So.2d 965; *Ellsworth v. Bishop Jewelry & Loan Co.,* (1987), Tex.App., 742 S.W.2d 533.

should have known that Campbell was of unsound mind. While Rubin's evidence indicates that Campbell only rarely entered the pawn shop and showed no sign of mental incompetency when purchasing the handgun or on prior visits to the shop, we cannot say that the facts are undisputed and lead only to the conclusion that Rubin had no reason to suspect Campbell was of unsound mind, and, therefore, did not violate the statutory duty to refrain from selling handguns to incompetents. The question of whether Rubin violated I.C. 35–47–2–7, therefore, is one which should be reserved for jury determination, and summary judgment on this issue is inappropriate.[8]

*Issue Three*

 Having determined that the evidence before the trial court was sufficient

to fend off summary judgment on the issue of duty, we now must turn to the issue of proximate cause. Generally, proximate cause is a question of fact; it becomes a question for the court only in plain and undisputable cases. *Petroski*, 171 Ind.App. at 24, 354 N.E.2d at 744. For an act to be the proximate cause of an injury, the injury must be a "natural and probable consequence which, in light of circumstances, should reasonably have been foreseen or anticipated." *Welch*, Ind.App, 488 N.E.2d at 390; *Havert v. Caldwell* (1983), Ind., 452 N.E.2d 154, 158, quoting *Bridges v. Kentucky Stone Co.* (1981), Ind., 425 N.E.2d 125, 147.

 Rubin argues that Campbell's criminal act constituted an intervening criminal act which should relieve Rubin of

**8.** Rubin attempts to persuade this court that the case of *Welch v. Railroad Crossing, Inc.* (1986), Ind.App., 488 N.E.2d 383, prohibits this court from finding that Rubin's duty to refrain from selling weapons to incompetent individuals, thereby protecting the public from the antecedent risk of such a sale, extended to include David Johnson. In *Welch*, a patron of a tavern brutally assaulted a third party after having been served alcohol while obviously intoxicated by an employee of the tavern in violation of Ind.Code § 7.1–5–10–15. This court held that absent knowledge that the patron was prone toward violent acts when intoxicated, the tavern owner could not be expected to forsee that the drunken patron would engage in a criminal act, and refused to hold the tavern owner liable for the assault victim's injuries.

Rubin argues that like the assault in *Welch*, David Johnson's death was unforseeable due to Campbell's criminal behavior. Therefore, according to Rubin, the pawn shop, its owner and employee cannot be held liable for the wrongful death of David Johnson. We disagree. In our opinion the *Welch* case is factually distinguishable from that presently before this court. Unlike the tavern owner in *Welch*, Rubin did not merely exacerbate the already deficient mental faculties of a potential tortfeasor; rather, Rubin provided Campbell with a handgun, the instrument directly linked to David Johnson's murder.

Given this distinction, we consider the present case more akin to those cases involving the negligent entrustment of an automobile to one who is intoxicated. *See Kahn v. Cundiff* (1989), Ind.App., 533 N.E.2d 164, 168 *affirmed*, Ind., 543 N.E.2d 627; *Lather v. Berg* (1988), Ind.App., 519 N.E.2d 755, 764–65 trans. pending; *Stocker v. Cataldi* (1986), Ind.App., 489 N.E.2d 144, 145 *trans. denied; see also Bernethy*, 97 Wash.2d at 933–34, 653 P.2d at 282–83. In those cases,

under certain circumstances a person having control over an automobile may be found liable for damages suffered by third parties due to the actions of an intoxicated driver, despite the driver's criminal behavior. *See* Ind.Code § 9–11–2–4. Therefore, we hold that *Welch* is not controlling in the present case and does not limit a gun vendor's liability to only those damages caused inadvertently.

Rubin also claims that the case of *Ralls v. Noble Roman's Inc.* (1986), Ind.App., 491 N.E.2d 205, prohibits this court from finding that Rubin's duty should be extended to cover the death of David Johnson. In *Ralls* a restaurant customer was accidentally shot by police outside a Noble Roman's during the apprehension of robbery suspects. Noble Roman's was aware that an undercover operation was being staged, but did not warn its customers of the undercover operation. This court upheld the trial court's entry of summary judgment in favor of Noble Roman's stating:

"A defendant is not liable for the acts of a public official, over whom he has no control, if such acts are the proximate cause of the injury sustained."

*Ralls*, 491 N.E.2d at 210. Rubin states that like the shooting death in *Ralls*, the shooting of Johnson was undertaken by an individual over whom Rubin had no control. Therefore, according to Rubin, Rubin should not be held liable for injuries resulting from Campbell's criminal act.

Rubin misinterprets the nature of the basis of liability in the present case. It is not Rubin's control over Campbell which is the focal point of the lawsuit, but rather it is Rubin's control over the gun which supports the conclusion that Rubin had a duty to refrain from transferring the handgun to an individual whom Rubin reasonably should have known was of unsound mind.

any liability for the death of David Johnson. Rubin is mistaken. In *K–Mart Enterprises v. Keller* (1983), Fla.App., 439 So.2d 283, Chief Judge Schwartz of the Florida Court of Appeals debunks an analysis similar to Rubin's in what we consider a succinct and persuasive fashion. In *K–Mart*, a handgun was sold to an admitted ex-felon and drug user. The purchaser of the gun then lent the weapon to his intoxicated brother. The brother immediately drove to the home of his estranged wife whereupon he fired several shots into the window of the house. The brother then drove to his father's home where he held his sister and her young children hostage. The police were called and during the ensuing stand-off the brother fired three shots into the kitchen, one of which hit a police officer in the head and caused extensive injuries. The police officer filed suit against the vendor of the handgun. The vendor argued that because the intervening events were so bizarre and unforeseeable, as a matter of law its conduct could not be considered the proximate cause of Keller's injuries. Having determined that a regulation of the transfer of handguns was undertaken to protect the public from the criminal and irresponsible use of these weapons, the Florida court rejected the gun seller's theory stating:

> "Since the irresponsibility and unpredictability of the recipient was the very reason that Congress forbade such a transfer of the firearm, it can make no difference that the danger was actually realized, as it almost invariably must be, in what would in other contexts be deemed an unanticipatable manner. As was said in *Holley v. Mt. Zion Terrace Apartments, Inc.*, 382 So.2d 98 (Fla. 3d DCA 1989), quoting from comment b to Restatement (Second) of Torts, § 449 (1965):
>
>> The happening of the very event the likelihood of which makes the actor's conduct negligent and so subjects the actor to liability cannot relieve him from liability. The duty to refrain from the act committed or to do the act omitted is imposed to protect the other from this very danger. To deny recovery because the other's exposure to the very risk from which it was the purpose of the duty to protect him resulted in harm to him, would be to deprive the other of all protection and to make the duty a nullity.
>
> 382 So.2d at 101. One who gives matches to a pyromaniac can hardly claim that it could not be exactly foreseen what or whom he might harm or in what strange manner or how long it might take him to light the fire. *See American Mutual Liability Ins. Co. v. Buckley & Co.*, 117 F.2d 845 (3d Cir. 1941); *Bridges v. Dahl*, 108 F.2d 228 (6th Cir.1939); *Dickens v. Barnham*, 69 Colo. 349, 194 P. 356 (1921); *Binford v. Johnston*, 82 Ind. 426, 42 Am.Rep. 508 (1882); *McEldon v. Drew*, 138 Iowa 390, 116 N.W. 147 (1908); *Carter v. Towne*, 98 Mass. 567, 96 Am.Dec. 682 (1868); *Cote v. Sears, Roebuck & Co.*, 86 N.H. 238, 166 A. 279 (1933); *Henningsen v. Markowitz*, 132 Misc. 547, 230 N.Y.S. 313 (N.Y.Sup.Ct.1928); *Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395 (1957); *Mendola v. Sambol*, 166 Pa.Super. 351, 71 A.2d 827 (1950); Annot., Liability of seller of firearm, explosive, or highly inflammable substance to child, 20 A.L.R. 29, 119 (1951).
>
> In accordance with these principles, numerous cases have held that the criminal misuse of a firearm does not insulate the seller from liability arising out of a violation of similar provisions of the Gun Control Act. *Decker v. Gibson Products Co. of Albany, Inc.*, supra; *Franco v. Bunyard*, supra; *J.M. Fields Co. v. Smuckler*, 385 So.2d 124 (Fla. 3d DCA 1980) (per curiam); see also, *Hetherton v. Sears, Roebuck & Co.*, supra; *Sosa v. Coleman*, 646 F.2d 991 (5th Cir.1981); contra, *Robinson v. Howard Brothers of Jackson, Inc.*, 372 So.2d 1074 (Miss. 1979). We follow these decisions in this case."

*Id.* at 287.

Like the court in *K–Mart*, we adopt the position that because the criminal, irresponsible, and unpredictable use of handguns is the very risk sought to be avoided under

I.C. 35–47–2–7, the realization of this risk cannot stand as a bar to recovery.

In the present case, evidence was presented showing that Campbell bought an Intratec 9 mm from Rubin and subsequently used that weapon to kill David Johnson. As stated in *K–Mart*, Fla.App., 439 So.2d at 287 and *Phillips v. Ray* (1983), La.App., 431 So.2d 849, 853, the recognized unpredictability and dangerous propensities of the mentally ill make the likelihood of injury to third persons resulting from the sale of a handgun to an individual of unsound mind appear to be logical, and, hence, reasonably forseeable. Campbell's use of the Intratec 9 mm to murder David Johnson is the type of harm anticipated by the legislature when I.C. 35–47–2–7 was enacted, and Campbell's criminal use of the handgun will not be deemed an intervening cause serving to eliminate Rubin's liability.

■ Rubin also argues that because the shooting took place approximately six months after Campbell purchased the handgun, Campbell's act was removed from the realm of forseeability. We consider this issue to be a factual determination better left to a jury's deliberation, but note the language in *K–Mart* wherein the Florida court states that "One who gives matches to a pyromaniac can hardly claim that it could not be exactly foreseen ... how long it might take him to light the fire." 439 So.2d at 287.

## CONCLUSION

Because the evidence before the trial court was sufficient to raise a genuine issue of fact concerning whether Rubin committed negligence per se in selling the Intratec 9 mm to Campbell, and whether Campbell's subsequent murder of David Johnson was the forseeable result of Rubin's negligent act, we affirm the trial court's denial of Rubin's motion for summary judgment.

Affirmed.

ROBERTSON, J., concurs.

BAKER, J., concurs with separate opinion.

BAKER, Judge, concurring.

While I concur in the result reached by the majority, I do not believe that all of paragraphs 25 through 31 of Looney's affidavit would be admissible, either for the purposes of considering the summary judgment motion or subsequently at trial. As noted by the majority, an expert may form an opinion based upon hearsay. However, the expert's opinion may not relate to matters on which he has not been qualified as an expert. Paragraphs 25, 28, and 31 are inadmissible because each state a conclusion about Johnson's state of mind. Although a lay opinion may generally be offered concerning another's sanity, *Guardianship of Carrico v. Bennett* (1974), 162 Ind.App. 330, 331, 319 N.E.2d 625, 627, the same must be based upon personal knowledge when contained in an affidavit used for summary judgment purposes. *French v. Hickman Moving & Storage* (1980), Ind. App., 400 N.E.2d 1384, 1387. Looney did not observe Johnson and therefore, had no personal knowledge of Johnson's sanity.

Ind. Trial Rule 56(E) requires that any affidavit in support of or in opposition to a motion for summary judgment must be based upon personal knowledge and "show affirmatively that the affiant is competent to testify about the matters stated therein." There is nothing in the affidavit to show that Looney has the qualifications to testify as an expert witness on the mental state of another person. However, I share the majority's opinion that Looney's expertise and his assertions in paragraph 26, 27, and 30 preclude Rubin's requested summary judgment, and I also would affirm the trial court's denial of the same.