Binford v. Johnston.

---

No. 9348.

## BINFORD v. JOHNSTON.

NEGLIGENCE.—*Injury from Toy Pistol.—Pleading.—Instructions.—Variance.— Evidence.*—The complaint alleged that the defendant sold to two sons of the plaintiff, aged ten and twelve years, cartridges loaded with powder and ball, for use in a toy pistol, and instructed the boys in their use, well knowing the dangerous character thereof, and that they were too young to be trusted with such articles; that the boys left the toy pistol loaded with one of the cartridges on the floor of their home, where a younger brother, aged six years, picked it up and discharged it, the ball inflicting a wound on one of the other boys from which he died; that the plaintiff expended large sums in an endeavor to cure the wounded boy, lost his services and society, etc.

*Held,* that the complaint was good on demurrer.

*Held*, also, that the sale of the cartridges, being in violation of the criminal law, was of itself an act of negligence by the defendant, and the court might properly so instruct as a conclusion of law.

*Held*, also, that if the evidence disclosed that the sale was made to one instead of both the lads as alleged, the variance was immaterial.

SAME.—*Intervening Agency.*—*Remote Damages.*—A person who places in the hands of a child an article of a dangerous character and one likely to do injury to the child itself or others, is guilty of an actionable wrong; and, where injury results, the fact that some agency intervenes between the original wrong and the injury does not preclude a recovery if the injury was the natural or probable result of the original wrong.

SAME.—*Sale of Dangerous Explosives.*—One who sells dangerous explosives to a child, knowing that they are to be used in such a manner as to put in jeopardy the lives of others, must be taken to contemplate the probable consequences of his wrongful act, and a probable consequence of such sale is that the buyers or their associates will be injured thereby.

From the Montgomery Circuit Court.

*M. W. Bruner*, for appellant.

*J. E. Humphries*, for appellee.

ELLIOTT, J.—The case made by the appellee's complaint, briefly stated, is this: Two sons of appellee, Allen and Todd, aged twelve and ten years respectively, bought of the appellant, a dealer in such articles, pistol cartridges loaded with powder and ball. The boys purchased the cartridges for use in a toy pistol, and were instructed by appellant how to make use of them in this pistol; the appellant knew the dangerous character of the cartridges, knew the hazard of using them as the boys proposed, and that the lads were unfit to be entrusted with articles of such a character; shortly after the sale, the toy pistol, loaded with one of the cartridges, was left by Allen and Todd lying on the floor of their home. It was picked up by their brother Bertie, who was six years of age, and discharged, the ball striking Todd and inflicting a wound from which he died.

A man who places in the hands of a child an article of a dangerous character and one likely to cause injury to the child itself or to others, is guilty of an actionable wrong. If a dealer should sell to a child dynamite, or other explosives of

a similar character, nobody would doubt that he had committed a wrong for which he should answer, in case injury resulted. So, if a druggist should sell to a child a deadly drug, likely to cause harm to the child or injury to others, he would certainly be liable to an action.

The more difficult question is whether the result is so remote from the original wrong as to bring the case within the operation of the maxim *causa proxima, et non remota, spectatur.* It is not easy to assign limits to this rule, nor to lay down any general test which will enable courts to determine when a case is within or without the rule. It is true that general formulas have been frequently stated, but these have carried us but little, if any, beyond the meaning conveyed by the words of the maxim itself.

The fact that some agency intervenes between the original wrong and the injury does not necessarily bring the case within the rule; on the contrary, it is firmly settled that the intervention of a third person or of other and new direct causes does not preclude a recovery if the injury was the natural or probable result of the original wrong. *Billman* v. *Indianapolis, etc., R. R. Co.,* 76 Ind. 166 (40 Am. R. 230). This doctrine remounts to the famous case of *Scott* v. *Shepherd,* 2 W. Black. 892, commonly known as the "Squib case." The rule goes so far as to hold that the original wrong-doer is responsible, even though the agency of a second wrong-doer intervened. This doctrine is enforced with great power by COCKBURN, C. J., in *Clark* v. *Chambers,* 7 Cent. L. J. 11; and is approved by the text-writers. Cooley Torts, 70; Addison Torts, section 12.

Although the act of the lad Bertie intervened between the original wrong and the injury, we can not deny a recovery if we find that the injury was the natural or probable result of appellant's original wrong. In *Henry* v. *Southern Pacific R. R. Co.,* 50 Cal. 176, it was said: "A long series of judicial decisions has defined proximate, or immediate and direct damages to be the ordinary and natural results of the negligence;

such as are usual and as, therefore, might have been expected." Lord ELLENBOROUGH said in *Townsend* v. *Wathen*, 9 East, 277, that "Every man must be taken to contemplate the probable consequences of the act he does." In *Billman* v. *Indianapolis, etc., R. R. Co., supra,* very many cases are cited declaring and enforcing this doctrine, and we deem it unnecessary to here repeat the citations. Under the rule declared in the cases referred to, it is clear that one who sells dangerous explosives to a child, knowing that they are to be used in such a manner as to put in jeopardy the lives of others, must be taken to contemplate the probable consequences of his wrongful act. It is a probable consequence of such a sale as that charged against appellant, that the explosives may be so used by children, among whom it is natural to expect that they will be taken, as to, injure the buyers or their associates. A strong illustration of the principle here affirmed is afforded by the case of *Dixon* v. *Bell*, 5 M. & S. 198. In that case the defendant sent a child for a loaded gun, desiring that the person who was to deliver it should take out the priming. This was done; but the gun was discharged by the imprudent act of the child, the plaintiff injured, and it was held that the defendant was liable. In *Lynch* v. *Nurdin*, 1 Q. B. 29, the doctrine of the case cited was approved, and the same judgment has been pronounced upon it by other courts as well as by the text-writers. *Carter* v. *Towne*, 98 Mass. 567 ; Wharton Neg. 851 ; Shearman & Redf. Neg., 3d ed., 596.

There is no such contributory negligence disclosed as will defeat a recovery. The age of the lads who bought the cartridges, the use the appellant knew they intended to make of them, and the fact that they did use them as instructed by him, are all important matters for consideration upon the question of contributory negligence. There are very many cases holding that the age of the child is always to be taken into account, and that what would be negligence in an adult will not be negligence in a young lad. The Supreme Court of the United

States thus states the rule: "The care and caution required of a child is according to his maturity and capacity only, and this is to be determined in each case by the circumstances of that case." *Railroad Co.* v. *Stout*, 17 Wal. 657. It must be the law, in cases of this nature, that the age of the child shall be considered, or it must follow that a vendor of the most dangerous explosives may sell them as freely to young children as to men of mature years, and this surely would be a result which no reasonable man would undertake to support. In *Potter* v. *Faulkner*, 1 Best & S. 800, ERLE, C. J., said: "The law of England, in its care for human life, requires consummate caution in the person who deals with dangerous weapons;" and we think it may with equal truth be said that the common law both of England and America requires of him who deals with dangerous explosives to refrain from placing them in the hands of children of tender age. If the child is too young to know the character of the thing sold him, it is the business of the dealer to refuse to sell him articles likely to put in jeopardy his own or some other person's life. Where one sells another a dangerous instrument, and that other is ignorant of its true character, and this the seller knows, he is responsible for injuries resulting from the negligent use of the instrument. There are many well reasoned cases which, carrying the doctrine still further, hold that one who places a dangerous thing in a position where it is likely to cause injuries to others, is liable to a child who is injured, although he may be a trespasser. *Bird* v. *Holbrook*, 4 Bing. 628; *State* v. *Moore*, 31· Conn. 479; *Birge* v. *Gardner*, 19 Conn. 507; *Lynch* v. *Nurdin*, *supra*; *Kerr* v. *Forgue*, 54 Ill. 482; *Keffe* v. *Milwaukee, etc., R. W. Co.*, 21 Minn. 207 (18 Am. R. 393); *Railroad Co.* v. *Stout*, *supra*. The case in judgment does not require us to carry the rule to the extent to which it is carried in the cases cited. Here, the appellant, with full knowledge of the character of the cartridges, and fully informed as to the use the lads intended to make of them, placed these dangerous instruments in their hands, and he can not now escape liability, upon

the ground that the boys had no right to buy or use such arti-
cles. Nor can he escape upon the ground that the loaded pistol
was left lying where the young child, Bertie, could reach it.
One who deals with children must anticipate the ordinary be-
havior of children. The appellant was bound to take notice of
the natural conduct of lads like those to whom he sold the car-
tridges, and it can not be justly said that the act of the lads
in carrying the pistol with them to their home, and leaving it
upon the floor within reach of their brother and playmate,
was an unnatural or improbable one.

It is contended that the complaint is bad because it does
not state who were the next of kin of the deceased, Todd
Johnston, and we are referred to *Cincinnati, etc., R. R. Co.* v.
*Chester,* 57 Ind. 297, 304; *Pittsburgh, etc., R. W. Co.* v. *Vin-
ing's Adm'r,* 27 Ind. 513; *Indianapolis, etc., R. R. Co.* v.
*Keeley's Adm'r,* 23 Ind. 133; *Gann* v. *Worman,* 69 Ind. 458.
We do not think these cases support the attack upon this
complaint. It is in two paragraphs and the demurrer is to
the entire complaint, so that if one is good the demurrer is
not well taken. In the second paragraph it is explicitly set
forth that the appellee was the father of the deceased; that
he expended money, and rendered services, in endeavoring
to secure a cure of his son; that he lost his services and society
from the time he was wounded until his death. These alle-
gations bring the case within the rule that money expended
in the effort to cure a wound wrongfully caused by the act of
another may be recovered. *Cincinnati, etc., R. R. Co.* v. *Chester,*
57 Ind. 297; Cooley Torts, 262. The right of action for the
death is a statutory one and is distinct and different from the
personal right in the father recognized by the common law.
The complaint shows a right to some relief and this gives it
sufficient strength to withstand a demurrer. *Bayless* v. *Glenn,*
72 Ind. 5.

Additional strength is added to one, at least, of the para-
graphs of the complaint by the facts stated in it, showing that
the cartridges were sold in violation of an express statute of

the State. By an act passed in 1875, and incorporated in the revision of 1881 as section 1986, it is made a misdemeanor to " sell, barter, or give to any other person under the age of twenty-one years any * cartridges manufactured and designed for use in a pistol." In placing the cartridges in the hands of the lads, Allen and Todd, the appellant did an unlawful act, and under settled principles is liable for the consequences naturally and proximately resulting from his unlawful act. In *Weick* v. *Lander*, 75 Ill. 93, it is held that, " where an act unlawful in itself is done, from which an injury may reasonably and naturally be expected to result, the injury, when it occurs, will be traced back and visited upon the original wrong-doer." In the course of the opinion and as a commentary upon cases reviewed, it is said : " The principle announced is, that whoever does an unlawful act is to be regarded as the doer of all that follows." The decision in the case cited is well sustained ; it finds support from the cases heretofore cited as well as from the following and many others : *Greenland* v. *Chaplin,* 5 Exch. 243 ; *Powell* v. *Deveney,* 3 Cush. 300 ; *Sheridan* v. *Brooklyn, etc., R. R. Co.,* 36 N. Y. 39 ; *Griggs* v. *Fleckenstein,* 14 Minn. 81 ; *Wellington* v. *Downer Kerosene Oil Co.,* 104 Mass. 64 ; *Farrant* v. *Barnes,* 11 C. B. (N. S.) 553.

Appellant attacks one only of the instructions given by the court. The instruction assailed reads thus : " I instruct you that a sale of cartridges, in violation of a criminal statute of the State, would be of itself an act of negligence, and if you find from the evidence in this case that the defendant sold the cartridges as alleged in the complaint, such sale is an act of negligence on his part, and you will have no further trouble on this point." The sole objection stated is, that the court had no right to declare that the sale of the cartridges in violation of law was an act of negligence. The only case cited in support of appellant's position is the case of *Weick* v. *Lander,* from which we have quoted, and it makes against

Binford v. Johnston.

rather than for appellant.   Where a party does an act in di-
rect violation of a positive statute, the court is justified in
characterizing it as an act of negligence.   It is in general
true, that negligence is a question of fact, but this is not uni-
versally true.   Judge Cooley has examined this question, and
with ability and vigor discussed it.   In the course of the dis-
cussion, he says many cases clearly present mere questions of
law, and that "Such are the cases of a disregard of a law ex-
pressly devised to prevent the like injuries.   An instance is that
of the failure of a railway train to come to a stop before cross-
ing another road, as is required by the statute in some States,
whereby another train is run into.   Here the negligence is
plain, but it might happen that some parties injured by it
would, by their own negligence, be precluded from any re-
dress.   The case might be equally clear if the railway com-
pany were to send out a train without brakes, and thereby an
injury should result through the impossibility of stopping
it when a danger appeared; or if one were to set a bonfire
in a town while a fierce wind was raging; * or if he were to
send a package of dynamite by express without disclosing its
dangerous nature.   Concerning such cases no one should be
in doubt."   Cooley Torts, 670.   The principle that the court
may, as matter of law, instruct the jury that an act constitutes
negligence, is illustrated by many cases in our own reports.
Thus, it has often been held that it is the duty of the court
to instruct the jury that it is negligence for a corporation to
make a dangerous excavation in a public street, and leave it
unguarded.   So, in relation to the duties of a railroad cor-
poration, the court often declares to the jury what act will
constitute negligence, and this holds good of instructions upon
the subject of persons attempting to cross railroad tracks.
But, without prolonging this opinion, we refer without com-
ment to the cases of *Railroad Co.* v. *Stout,* 17 Wal. 657 ; *Ohio,
etc., R. W. Co.* v. *Collarn,* 73 Ind. 261 (38 Am. R. 134);
VOL. 82.—28

*Pittsburgh, etc., R. R. Co.* v. *Williams,* 74 Ind. 462; *Louisville, etc., R. W. Co.* v. *Richardson,* 66 Ind. 43 (32 Am. R. 94). It must not be left out of mind that the instruction does not affirm that there may be a recovery, but simply declares that it is negligence for a person to voluntarily do an act in direct violation of a statute. In a case where there is evidence tending to show some excuse for doing an act prohibited by statute, it might, perhaps, be necessary to qualify the instruction, but there was here no such evidence. And, it is to be remarked, the instruction refers, when taken, as it must be, as an entirety, to such a sale as that charged in the complaint, thus limiting the general proposition to the particular case.

The appellant asked the court to instruct the jury, that if the sale was to Todd Johnston, and not to him and his brother jointly, there could be no recovery. We think this instruction was properly refused. It was sufficient for the appellee to sustain the substance of the issue tendered by him. It was not material whether the boys joined in buying the cartridges; if the sale was to one of them, it was an actionable wrong. Judgments can not be reversed for an immaterial variance; it is only where the issue in its general scope is not sustained, that a reversal will be adjudged. R. S. 1881, sec. 393.

Instructions numbered ten and fifteen, asked by the appellant, are substantially the same, and, as the former was given by the court, it was proper to refuse the latter. It is not error to refuse an instruction when another embodying the same matter has been given.

The other questions presented upon the instructions are disposed of in our discussion of the sufficiency of the complaint.

Judgment affirmed.