

**FILED**

Mar 17 2016, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANTS

Vincent P. Antaki
Reminger Co., LPA
Indianapolis, Indiana

Christopher Renzulli
Renzulli Law Firm, LLP
White Plains, New York

ATTORNEYS FOR APPELLEE

Roger L. Pardieck
Karen M. Davis
The Pardieck Law Firm
Seymour, Indiana

Jonathan E. Lowy
Robert B. Wilcox, Jr.
Brady Center to Prevent Gun Violence
Legal Action Project
Washington, DC

Michael D. Schissel
Arnold & Porter, LLP
New York, New York

Aarash Haghighat
Arnold & Porter, LLP
Washington, DC

Amici Curiae

Indiana Trial Lawyers Association
Nicholas F. Baker
The Hastings Law Firm
Indianapolis, Indiana

Law Enforcement and Municipal
Organizations
Shana D. Levinson
Levinson & Levinson
Merrillville, Indiana

Scott M. Abeles
Stephen R. Chuk
Proskauer Rose, LLP
Washington, DC

# IN THE
# COURT OF APPEALS OF INDIANA

KS&E Sports and Edward J.
Ellis,

*Appellants-Defendants,*

v.

Dwayne H. Runnels,

*Appellee-Plaintiff.*

March 17, 2016

Court of Appeals Case No.
49A02-1501-CT-42

Appeal from the Marion Superior
Court

The Honorable John F. Hanley,
Judge

Cause No. 49D11-1312-CT-44030

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellants-Defendants, KS&E Sports and Edward J. Ellis (Ellis)[1] (collectively,

KS&E) appeal the trial court's denial of their motion for judgment on the

pleadings against Appellee-Plaintiff, Dwayne H. Runnels (Runnels), in which

KS&E Sports asserted immunity from suit pursuant to Indiana Code section 34-

12-3-3(2), arguing that Runnels' damages resulted from the criminal misuse of a

firearm by a third party.

We affirm.[2]

## ISSUE

---

[1] Ellis is an officer, director, shareholder, and/or owner of KS&E Sports, as well as an employee.

[2] We held oral argument in this cause on December 15, 2015 at the Indiana Court of Appeals Courtroom in Indianapolis, Indiana. We commend and thank counsel for their excellent advocacy.

[3] KS&E Sports raised one issue on interlocutory appeal, which we restate as: Whether Runnels' Complaint stated a claim on which relief can be granted.

## FACTS AND PROCEDURAL HISTORY

[4] On December 12, 2011, Runnels, a patrol officer for the Indianapolis Metropolitan Police Department, initiated a traffic stop of a vehicle allegedly involved in a recent armed robbery and shooting. As Runnels approached the vehicle, Demetrious Martin (Martin) exited the driver side of the vehicle with a handgun and fired two shots. One bullet missed Runnels but struck his patrol car. The second bullet pierced Runnels' hip and lodged in his upper pelvis. Runnels returned fire, killing Martin.

[5] An ATF trace on the Smith & Wesson handgun used by Martin revealed that it was purchased at the KS&E Sports retail store in Indianapolis on October 10, 2011, two months prior to the shooting. It is alleged that Martin, a convicted felon who could not legally purchase a gun, obtained the handgun through an unlawful straw sale. Martin and Tarus E. Blackburn (Blackburn) entered the KS&E Sports store together and Martin selected the handgun in the presence of Blackburn and a KS&E Sports' employee. Martin and Blackburn then left the store only to return later that afternoon. Upon their return, only Blackburn entered KS&E Sports and completed the firearms purchase paperwork of the handgun previously selected by Martin. Blackburn paid the purchase price of

$325 in cash. Once outside the store, Blackburn transferred the handgun to Martin for $375.[3]

[6] On December 10, 2013, Runnels filed his Complaint against KS&E Sports, Ellis, and Blackburn for "damages resulting from KS&E's negligent, reckless, and unlawful sale of a Smith & Wesson .40 caliber handgun to 'straw buyer' Blackburn and the negligent entrustment of that firearm to Blackburn and [Martin], who used the Smith & Wesson Handgun to shoot and harm [Runnels]." (Appellant's App. p. 10). Runnels asserted claims of negligence, negligent entrustment, negligence per se, negligent hiring/training/supervision, conspiracy, public nuisance, and piercing the corporate veil.

[7] On June 4, 2014, after answering the Complaint, KS&E filed its motion for judgment on the pleadings pursuant to Indiana Trial Rule 12(C) "on the grounds that [Ind. Code] § 34-12-3-3(2) requires immediate dismissal of this case." (Appellant's App. p. 36). Following a hearing, the trial court summarily denied KS&E's motion on October 21, 2014. The trial court subsequently granted KS&E's motion to certify its ruling for interlocutory appeal. This court accepted jurisdiction on February 20, 2015.

[8] Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

---

[3] Blackburn later pled guilty to one Count of making a false and fictitious written statement in connection with the acquisition of a firearm, in violation of federal law. He was sentenced to twelve months in prison.

[9]     KS&E contends that the trial court erred when it denied its motion for judgment on the pleadings pursuant to Ind. Trial Rule 12(C). A motion for judgment on the pleadings pursuant to T.R. 12(C) attacks the legal sufficiency of the pleadings. *Davis ex rel. Davis v. Ford Motor Co.*, 747 N.E.2d 1146, 1149 (Ind. Ct. App. 2001), *trans. denied*. In reviewing a trial court's decision on a motion for judgment on the pleadings, this court conducts a *de novo* review. *Id.* The test to be applied when ruling on a T.R.12(C) motion that raises the defense of failure to state a claim upon which relief can be granted is whether, in the light most favorable to the non-moving party and with every intendment regarded in his favor, the complaint is sufficient to constitute any valid claim. *Id.* In applying this test, the court may look only at the pleadings, with all well-pleaded material facts alleged in the complaint taken as admitted, supplemented by any facts of which the court will take judicial notice. *Id.* at 1149. "The 'pleadings' consist of a complaint and an answer, a reply to a counterclaim, an answer to a cross-claim, a third-party complaint, and an answer to a third-party complaint." *Consol. Ins. Co. v. Nat'l Water Servs*. LLC, 994 N.E.2d 1192, 1196 (Ind. Ct. App. 2013) (quoting *Waldrip v. Waldrip*, 976 N.E.2d 102, 110 (Ind. Ct. App. 2012)). "Pleadings also consist of any written instruments attached to a pleading." *See* T.R. 10(C) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). As such, a motion for judgment on the pleadings theoretically is directed towards a determination of the substantive merits of the controversy. *Davis*, 747 N.E.2d at 1150. We will affirm the trial court's grant of a T.R.12(C) motion for judgment on the pleadings when it is clear from the face of the pleadings that one of the parties

cannot in any way succeed under the operative facts and allegations made therein. *Id.* at 1149.

[10] In our *de novo* review of the trial court's denial of a motion for judgment on the pleadings, then, we must consider whether Runnels' Complaint is legally sufficient to support relief under any circumstances. In his Complaint, Runnels advances several claims, sounding in negligence and nuisance, and focuses on the harm that KS&E proximately caused through their alleged wrongful and unlawful conduct by entrusting a handgun to a straw purchaser.

[11] In total, Runnels' Complaint presents KS&E with seven claims for relief. Specifically, Runnels asserts that KS&E breached its "duty to exercise reasonable care on selling firearms and to refrain from engaging in any activity that would create reasonably foreseeable risks of injury to others." (Appellant's App. p. 21). As such, KS&E knew or reasonably should have known that Blackburn was not the intended purchaser of the handgun. In a similar light, Runnels brings a claim of negligent entrustment, contending that "KS&E and its employee(s) wantonly permitted Blackburn to acquire possession of the Smith & Wesson handgun under circumstances in which it knew or should have known that Blackburn would use the handgun in a manner that would create a substantial and unacceptable risk of physical injury to others." (Appellant's App. p. 15). As a third Count, Runnels asserts that based on the illegal straw sale, KS&E committed negligence per se, followed by a claim of negligent hiring, training and supervision because "KS&E placed its employee(s) in a position to cause foreseeable harm to the public by wantonly

failing to implement adequate protocols for training and supervising its employee(s) to prevent unlawful straw sales to individuals such as Blackburn[.]" (Appellant's App. p. 28). Runnels also claims to have incurred damages resulting from a conspiracy "to unlawfully and unreasonably sell firearms without exercising ordinary care in order to make a profit." (Appellant's App. p. 29). Besides claims based on negligence, Runnels presents a public nuisance assertion because "[b]y negligently, recklessly, and/or intentionally selling vast quantities of firearms in a manner that ensures a steady flow of firearms in large quantities to illegal traffickers, the illegal secondary market, criminals, juveniles, and others prohibited by law from having firearms and/or persons with criminal purposes, KS&E has negligently and/or knowingly participated in creating and maintaining an unreasonable interference with the rights held in common by the general public, constituting a public nuisance under Indiana law[.]" (Appellant's App. p. 21). Finally, Runnels attempts to pierce the corporate veil because the company was used by its owner to promote illegal activities in violation of state and federal law.

## I. *Negligence Claims*

The elements of a negligence action which have long been recited by courts in Indiana and elsewhere are duty, breach, causation, and harm. *Estate of Heck v. Stoffer*, 786 N.E.2d 265, 268 (Ind. 2003). Following *Webb v. Jarvis*, 575 N.E.2d 992 (Ind. 1991), the duty issue became viewed in terms of the balance of foreseeability, public policy, and the relationship between the parties. Where a duty is already recognized, it is to be followed and we need not turn to a

balancing test of factors to determine whether a duty exists. *N. Ind. Pub. Serv. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003). "Here, precedent has established that a custodian of firearms owes a duty to act with reasonable care to see that the weapons do not fall into the hands of people known to be dangerous." *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1241-42 (Ind. 2003). In *Estate of Heck*, our supreme court recognized a duty on the part of an owner of a gun to exercise reasonable care to prevent the weapon from falling into hands known to be dangerous. *Estate of Heck*, 786 N.E.2d at 270. As such, KS&E had a duty to Runnels to ensure that the Smith & Wesson handgun did not fall into the hands of convicted felons.

[13] However, at the time the handgun was used, it was no longer in the control of KS&E. Under standard negligence doctrine, in order for a defendant to be liable for a plaintiff's injury, the defendant's act or omission must be deemed to be a proximate cause of that injury. *City of Gary*, 801 N.E.2d at 1243. Proximate cause in Indiana negligence law has two aspects. The first— causation in fact—is a factual inquiry for the jury. If the injury would not have occurred without the defendant's negligent act or omission, there is causation in fact. *Id*. at 1243-44. A second component of proximate cause is the scope of liability. That issue, which is also within the province of the trier of fact, turns largely on whether the injury "is a natural and probable consequence, which in the light of the circumstances, should have been foreseen or anticipated." *Id*. (citing *Bader v. Johnson*, 732 N.E.2d 1212, 1218 (Ind. 2000)). Under this doctrine, liability may not be imposed on an original negligent actor who sets

into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omissions. *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 108 (Ind. 2002). Under this comparative fault theory, the trier of fact can allocate fault to multiple contributing factors based on their relative factual causation, relative culpability, or some combination of both. *Id*. at 109.

> A crime involving the use of a gun may be attributable in part to an unlawful sale, but it also requires an act on the part of the criminal. Among the defendants, the retailers are the closest link in the causal chain to the criminal act. But even these dealers may not be the sole cause of the injuries from the illegal use of the weapon, and in many cases will not bear any share of the fault.

*City of Gary*, 801 N.E.2d at 1244.

[14] Runnels contends that KS&E and its employees were aware that Blackburn was an illegal straw purchaser and the ultimate recipient of the handgun was Martin, a convicted felon. Therefore, Runnels claims that it was reasonably foreseeable that this unlawful and negligent sale would cause injuries and harm to him. While there may be issues of proximate cause, or, as some courts put it, "remoteness" of damage, we cannot say that Runnels stated an insufficient claim. *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1144 (Ohio 2002). However, whether the claim can be substantiated is an issue left for another day. We reach a similar conclusion with respect to Runnels' contention of negligent supervision of employees and negligent entrustment.

[15] With respect to Runnels' negligence per se allegation, we turn to *Rubin v. Johnson*, 550 N.E.2d 324 (Ind. Ct. App. 1990). In *Rubin*, we noted that "[t]he

unexcused or unjustified violation of a duty proscribed by statute constitutes negligence per se if the statute is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation." *Id*. at 329. Also, where a statute is enacted to ensure the safety of others, its violation constitutes negligence per se. *Id*.

[16] The Indiana statutes regulating the transfer and possession of handguns were enacted by the legislature to protect the public from those who would use such weapons in a dangerous or irresponsible manner. *See* I.C. §§ 35-47-2-7; 35-47-2.5-16; *Matthews v. State*, 148 N.E.2d 334, 338 (Ind. 1957). The legislature's enactment of these statutory provisions reflects a strong public policy against entrusting certain individuals with handguns. *Rubin*, 550 N.E.2d at 329. The purpose of this policy is to safeguard the general public from the incompetent, irresponsible or criminal use of such weapons. *Id*. at 330. Clearly, as a member of the general public, Runnels was among the persons intended to be protected by these statutes. While Runnels will incur similar problems to establish proximate cause and remoteness of damages as with his negligence claims, we do find his Complaint sufficient with respect to his negligence per se contention to survive KS&E's motion for judgment on the pleadings.

## II. *Nuisance*

[17] The Indiana Statute section 32-30-6-6 defines nuisance as "[w]hatever is (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction

to the free use of property; so as to essentially interfere with the comfortable enjoyment of life or property, is a nuisance, and the subject of an action." The essence of a nuisance claim is the foreseeable harm unreasonably created by the defendants' conduct. *City of Gary*, 801 N.E.2d at 1235. In this light, our supreme court has interpreted the statute as:

> A nuisance is an activity that generates injury or inconvenience to others that is both sufficiently grave and sufficiently foreseeable that it renders it unreasonable to proceed at least without compensation to those that are harmed. Whether it is unreasonable turns on whether the activity, even if lawful, can be expected to impose such costs or inconvenience on others that those costs should be borne by the generator of the activity, or the activity must be stopped or modified.

*Id*. at 1231 (citing W. Page Keeton, *Prosser and Keaton on The Law of Torts* § 88 at 629-30 (5th ed. 1984)). "There is no requirement that the activity involve an unlawful activity or use of land." *Id*. at 1233. Thus, if an activity meets the requirements of an unreasonable interference with a public right, it may constitute a public nuisance. *Id*. Also, a public nuisance may exist without an underlying independent tort. *Id*. at 1234.

[18] Runnels asserts that by negligently selling firearms "in a manner that ensures a steady flow of firearms in large quantities to illegal traffickers," and "others prohibited by law from having firearms," KS&E created an unreasonable interference with the public's health and use in public facilities, resulting in substantial and ongoing human and financial harm. (Appellant's App. p. 21). These allegations state a claim and survive KS&E's motion.

### III. *Piercing the Corporate Veil*

In general, the doctrine of "piercing the corporate veil" holds individuals liable for corporate actions based on the failure to observe corporate formalities. *Fairfield Development, Inc., v. Georgetown Woods Sr. Apartments Ltd. Partnership*, 768 N.E.2d 463, 468 (Ind. Ct. App. 2002), *trans. denied*. As a general rule, Indiana courts are reluctant to disregard corporate identity and do so only to protect third parties from fraud or injustice when transacting business with a corporate entity. *Four Seasons Mfg., Inc. v. 1001 Coliseum, LLC*, 870 N.E.2d 494, 504 (Ind. Ct. App. 2007). A party seeking to pierce the corporate veil bears the burden of establishing that the corporation was so ignored, controlled, or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice. *Id*.

In deciding whether the party seeking to pierce the corporate veil has met its burden, Indiana courts consider whether the party has presented evidence showing: (1) undercapitalization; (2) absence of corporate records; (3) fraudulent representation by corporation shareholders or directors; (4) use of the corporation to promote fraud; (5) payment by the corporation of individual obligations; (6) commingling of assets and affairs; (7) failure to observe required corporate formalities; or (8) other shareholder acts or conduct ignoring, controlling, or manipulating the corporate form. *Aronson v. Price*, 644 N.E.2d 864, 867 (Ind. 1994). This list of factors is not necessarily exhaustive, and all factors need not be shown to support a decision to pierce the corporate veil. *D.S.I. v. Natare Corp.*, 742 N.E.2d 15, 27 (Ind. Ct. App. 2000), *reh'g denied, trans. denied*.

Runnels' Complaint advances that Ellis, as owner of KS&E Sports, used the store as its alter ego to promote the illegal activities and participate in the sale of the Smith & Wesson handgun in violation of state and federal laws, causing physical injury and associated harm to Runnels. Although the allegations in the Complaint in support of piercing the corporate veil are weak as "the corporate veil is pierced only where it is clear that the corporation is merely a shell for conducting the defendant's own business and where the misuse of the corporate form constitutes a fraud or promotes injustice," we are mindful that the determination of whether there are sufficient grounds for piercing the corporate veil is "a complex economic question" and should not be disposed of lightly. *Aronson*, at 867. As such, we conclude that Runnels' Complaint with respect to piercing the corporate veil is sufficient to survive KS&E's motion for judgment on the pleadings.

## IV. *Indiana Code section 34-12-3-3(2)*

Despite the sufficiency of the allegations in Runnels' Complaint, KS&E contends that the trial court should dismiss these claims because Indiana Code section 34-12-3-3 provides the company with immunity from civil liability. The statute relied upon by KS&E to support its argument provides that:

> Sec. 3. Except as provided in section 5(1) or 5(2) of this chapter, a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for:
>
> (1) Recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful:
>
> (A) design;

(B) manufacture;

(C) marketing; or

(D) sale;

of a firearm or ammunition for a firearm; or

(2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

Focusing on subsection (2), KS&E posits an expansive interpretation of the enactment, claiming that "the plain language of the statute evidences an intent by the General Assembly to remove liability for actions over which firearm sellers have no control (i.e., the criminal acts of third parties). When read in the context of the entire statute, I.C. § 34-12-3-3(2) provides a separate layer of protection to firearm sellers in the event that a third party's criminal or unlawful actions caused the harm at issue." (Appellant's Br. p. 5). Accordingly, KS&E maintains that because Martin, a third party, caused Runnels' injuries, the retailer is immune from suit. In other words, regardless of the perceived illegal strawman sale, KS&E cannot be held liable because the injuries were inflicted by the intervening criminal acts of a third party.

[23] The rules of statutory construction require courts to give the words of a statute their plain and ordinary meaning unless the statute otherwise provides definitions, or unless the construction is plainly repugnant to the intent of the legislature. *Ind. Bureau of Motor Vehicles v. Orange*, 889 N.E.2d 388, 390 (Ind. Ct. App. 2008). However, if a statute is susceptible to more than one interpretation, it is ambiguous. *Id*. If a statute is ambiguous, then courts must give effect, and implement the intent of the legislature. *Id*.

[24] Reviewing the plain language of the statutory enactment, it is clear that the statute provides two distinct layers of protection for firearm sellers. Section 1 bars victims of gun violence from pursuing claims against firearms sellers who are alleged to have done nothing wrong beyond lawfully selling a firearm, whereas section 2 provides that even where a firearm seller has acted unlawfully, the section limits the seller's exposure to liability by barring plaintiffs from holding him accountable for the portion of damages that results from the criminal or unlawful misuse of a firearm by a third party.

[25] Runnels' Complaint expressly alleges liability based on the harm that KS&E proximately caused Runnels through their *own* wrongful and unreasonable misuse of a firearm; the Complaint does not couch its allegations in terms of unlawful conduct by Martin. Accordingly, considering the unambiguous language in light of our limited scope of review under a T.R. 12(C) motion, we cannot conclude that under the operative facts and allegations made in the Complaint, Runnels cannot in any way succeed. *See Davis*, 747 N.E.2d at 1149. Therefore, we conclude that within the boundaries of this review, the Complaint is sufficient in setting forth valid claims and, at this point in time, I.C. § 34-12-3-3 does not bar further proceedings before the trial court.[4]

## CONCLUSION

---

[4] To be sure, we reiterate that based on the scope of our review, we do not decide whether I.C. § 34-12-3-3 should be characterized as an immunity statute, as proposed by KS&E. A decision on that issue is better left for another day and should be made outside the province of an initial T.R. 12(C) analysis.

Based on the foregoing, we hold that Runnels' Complaint stated a claim on which relief can be granted.

Affirmed.

Brown, J. concurs with separate concurring opinion

Altice, J. dissents with separate opinion

| | |
|---|---|
| KS&E Sports and Edward J. Ellis, | Court of Appeals Case No. 49A02-1501-CT-42 |
| *Appellants-Defendants*, | |
| v. | |
| Dwayne H Runnels, | |
| *Appellee-Plaintiff*. | |

**Brown, Judge, concurring.**

[30]     I concur with the reasoning and the result reached by the majority, but I write separately to clarify my view of the issue. Initially, it is important to consider that to the extent Ind. Code § 34-12-3-3 operates in derogation of the common law, this court must strictly construe it. *See JPMorgan Chase Bank, N.A. v. Claybridge Homeowners Ass'n, Inc.*, 39 N.E.3d 666, 671 (Ind. 2015). When the legislature enacts a statute in derogation of common law, we presume that the legislature is aware of the common law and does not intend to make any

change beyond what is declared in express terms or by unmistakable implication. *Preferred Prof'l Ins. Co. v. West*, 23 N.E.3d 716, 727 (Ind. Ct. App. 2014). Also, in construing a statute, "[i]t is just as important to recognize what the statute does not say as it is to recognize what it does say." *Goodrich Quality Theaters, Inc. v. Fostcorp Heating and Cooling, Inc.*, 39 N.E.3d 660, 665 (Ind. 2015) (quoting *N.D.F. v. State*, 775 N.E.2d 1085, 1088 (Ind. 2002)).

[31] As the majority notes, Ind. Code § 34-12-3-3 provides two categories under which a person may not bring or maintain an action against a firearms seller. Subsection 1 precludes actions seeking to recover damages, injunctive relief, or the abatement of a nuisance regarding lawful activity related to designing, manufacturing, marketing, or selling firearms or ammunition. Subsection 2 bars actions seeking to recover damages which were the result of the criminal or unlawful misuse of a firearm or ammunition by a third party. Importantly, however, Section 3 does *not* bar bringing an action seeking damages relating to *unlawful* activity on the part of the firearms seller. The implication of the absence of such language is obvious: the legislature did not intend to bar actions against firearms sellers relating to their own unlawful activity.

[32] That the legislature did not intend to provide firearms sellers the extent of immunity argued by KS&E is demonstrated by comparing the legislature's actions following two 2003 decisions of the Indiana Supreme Court. First, the Court handed down *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003). In that case, the City of Gary brought a comprehensive lawsuit "against a number of participants at various stages in the manufacture

and distribution of handguns," alleging "claims for public nuisance and negligence against manufacturers, wholesalers, and distributors of these products." *City of Gary*, 801 N.E.2d at 1227. The City "sued for injunctive relief and money damages for the harm it alleges is caused by the unlawful marketing and distribution of handguns." *Id.* Its complaint alleged claims of public nuisance, negligence in distribution of guns, and negligent design. *Id.* at 1228. The Court held that most of the allegations in the City's complaint stated a claim and reversed the trial court's dismissal of such claims. *Id.* at 1228-1229.

[33] That same year, the Court issued its decision in *Estate of Heck v. Stoffer*, 786 N.E.2d 265 (Ind. 2003), *reh'g denied*. In *Heck*, the Court examined whether a plaintiff could bring a negligence action against a gun owner related to the storage of a firearm. *Heck*, 786 N.E.2d at 266. The facts underlying *Heck* involved Timothy Stoffer, who was the son of the defendants and was a fugitive felon, shooting and killing Allen County Police Officer Eryk Heck using his parents' firearm, which he took without their permission. *Id.* at 266-267. Heck's Estate brought the negligence action, and the Stoffers moved to dismiss the claim and alternatively for summary judgment, and the trial court granted their motion both as a dismissal and an entry of summary judgment. *Id.* at 267. On transfer, the Court reversed the trial court on both grounds. *Id.* at 271-272. Specifically, the Court reasoned that "the Stoffers had a duty to exercise reasonable and ordinary care in the storage and safekeeping of their handgun" and that accordingly the action should be reinstated. *Id.* at 270.

[34] In the legislature's 2004 session, it passed Pub. L. No. 80-2004 which amended Ind. Code § 34-12-3-3, changing the text in the preamble of the statute from "[e]xcept as provided in section 5" to read "[e]xcept as provided in section 5(1) or 5(2) . . . ."[5] Pub. L. No. 80-2004, § 3 (eff. March 17, 2004). That same session law also contained Section 5, which codified Ind. Code § 34-30-20-1, titled "Immunity for Misuse of a Firearm or Ammunition by a Person Other Than the Owner," and which provided:

> A person is *immune from civil liability* based on an act or omission related to the use of a firearm or ammunition for a firearm by another person if the other person directly or indirectly obtained the firearm or ammunition for a firearm through the commission of the following:
>
>> (1) Burglary (IC 35-43-2-1).
>> (2) Robbery (IC 35-42-5-1).
>> (3) Theft (IC 35-43-4-2).
>> (4) Receiving stolen property (IC 35-43-4-2).
>> (5) Criminal conversion (IC 35-43-4-3).

Pub. L. No. 80-2004, § 5 (eff. March 17, 2004) (emphasis added).

[35] The legislature demonstrated in Pub. L. No. 80-2004 that it knew how to write a statute expressly derogating the common law and granting immunity from civil liability, and it chose not to do so regarding the unlawful sale of firearms for firearms sellers in Ind. Code § 34-12-3-3. I am persuaded by an argument made by Runnels's counsel at oral argument regarding how to interpret the

---

[5] Ind. Code § 34-12-3-3 was originally added to the Indiana Code by Pub. L. No. 19-2001, § 1 (eff. April 18, 2001). As discussed below and in the dissent, the effective date of Section 3 was amended by Pub. L. No. 106-2015, § 4 to August 26, 1999.

legislature's actions regarding Section 3 as follows: "What the legislature was trying to do was they were codifying existing Indiana comparative fault law and freezing the common law relating to gun companies to prevent this expansion to novel theories that would impose . . . liability such as absolute liability." Oral Arg. at 26:58-27:22, *available at*

https://mycourts.in.gov/arguments/default.aspx?&id=1874&view=detail&yr= &when=&page=1&court=&search=&direction=%20ASC&future=True&sort= &judge=108&county=&admin=False&pageSize=20. If the legislature wished to abrogate over 100 years of Indiana common law regarding the potential to impose liability on gun sellers for their own unlawful actions, it would have expressly done so. *See Binford v. Johnston*, 82 Ind. 426, 427-428, 431 (Ind. 1882) (holding that a firearm seller could be held civilly liable for negligently selling pistol cartridges loaded with powder and ball to two minors, in which one of the minors was shot and killed by a ball, because "we can not deny a recovery if we find that the injury was the natural or probable result of appellant's original wrong"); *see also City of Gary*, 801 N.E.2d at 1227 (holding that the City of Gary's claims for public nuisance and negligence against manufacturers, wholesalers, and distributors of handguns were valid claims under Indiana law); *Rubin v. Johnson*, 550 N.E.2d 324, 326, 331-333 (Ind. Ct. App. 1990) (denying the defendant gun seller's motion for summary judgment on the plaintiff's wrongful death action, in which the plaintiff alleged that defendant Rubin knowingly transferred a firearm to a person who Rubin knew or reasonably should have known was of unsound mind, holding that Rubin's argument that the shooter's act constituted an intervening criminal act which should relieve

him of any liability is erroneous and that "because the criminal, irresponsible, and unpredictable use of handguns is the very risk sought to be avoided under I.C. 35-47-2-7 [which prohibits sales or transfers of firearms to certain individuals], the realization of this risk cannot stand as a bar to recovery").

[36] The claims alleged by Runnels in his complaint allege damages resulting from KS&E's own actions. Counts I-V each sound in negligence, in which Runnels alleges that KS&E's sale to Blackburn was a proximate cause of Runnels's injuries. Count VI, alleging a claim of damages resulting from a conspiracy, also directly concerns the actions of KS&E in causing Runnels's injuries. Count VII, public nuisance, is specifically concerned with the nuisance created by KS&E itself as a result of the store's unlawful activities. Finally, Count VIII seeks to pierce the corporate veil and sue Edward Ellis individually for his role in committing unlawful acts. I believe that none of these counts are barred by Ind. Code § 34-12-3-3.

[37] I also believe it improper to consider the legislature's amendment to Ind. Code § 34-12-3-3 to change its effective date, seemingly so as to apply that statute to the issues being litigated in *City of Gary*, as reason to conclude that the legislature intended Ind. Code § 34-12-3-3 to immunize gun sellers from liability stemming from the unlawful sale of firearms. As noted, the nature of that case is far different from the facts presented by Runnels. Indeed, much of the Court's analysis pertained to the City's claim "that handgun manufacturers, distributors, and dealers conduct their business in a manner that unreasonably interferes with public rights in the City of Gary, and therefore have created a

public nuisance," in which it was seeking in part injunctive relief to abate or enjoin the nuisance. 801 N.E.2d at 1229, 1238. The Court noted that "a public nuisance may exist without an underlying independent tort," that "[h]ere the complaint does allege negligence and resulting predicable injury," but that "a nuisance claim may be predicated on a lawful activity conducted in such a manner that it imposes costs on others." *Id.* at 1234. The Court observed that "[n]uisances may arise from a lawful activity" and pointed to *Yeager & Sullivan, Inc. v. O'Neill*, 163 Ind. App. 466, 324 N.E.2d 846 (1975), in which this court "held that '[w]hile the keeping of hogs, being a lawful enterprise, cannot be characterized as an absolute nuisance or a nuisance, per se, such an activity can become a nuisance per accidens by reason of the manner in which the hogs are kept, the locality or both.'" *Id.* at 1234 n.9 (quoting *Yeager*, 163 Ind. App. at 474, 324 N.E.2d at 852). The Court specifically stated in examining a defense raised by the firearms manufacturers and distributors that "an activity can be lawful and still be conducted in an unreasonable manner so as to constitute a nuisance." *Id.* at 1234. In addition, the negligence claim alleged that the defendants in that action had "acted negligently in the *distribution, marketing, and sale* of handguns." *Id.* at 1241 (emphasis added). Such a claim encompasses a far wider range of activity than the specific negligence claim alleged by Runnels.

[38] Thus, it is unclear which, if any, of the City of Gary's allegations would be impacted by the language of Ind. Code § 34-12-3-3, and it is not before this Court to decide the statute's impact in that case. The action brought by

Runnels contains specific allegations of a straw sale which caused his personal injuries. Indeed, the Court in *City of Gary* observed that "[i]n this procedural posture the City cites no specific transaction in which its damages are traceable to use of a gun obtained in an unlawful sale." *Id.* at 1244. I do not believe the fact that the legislature may have acted to apply Ind. Code § 34-12-3-3 to some yet-to-be-discerned aspect of the *City of Gary* litigation necessarily leads to the conclusion that the statute is intended to provide complete immunity to gun sellers for unlawful sales of firearms.

[39] For the reasons stated, I concur with the majority opinion.

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| KS&E Sports and Edward J. Ellis, | Court of Appeals Case No. 49A02-1501-CT-42 |
| *Appellants-Defendants,* | |
| v. | |
| Dwayne H. Runnels, | |
| *Appellee-Plaintiff.* | |

**Altice, Judge, dissenting.**

[40] I respectfully dissent. The issue before us, one of first impression, is whether Ind. Code § 34-12-3-3(2) immunizes firearms sellers, like KS&E, against civil actions for damages where the plaintiff was injured by the criminal misuse of a firearm by a third party regardless of whether the firearm was sold lawfully by the firearms seller. This is purely an issue of statutory interpretation.

I.C. § 34-12-3-3 provides:

> Except as provided in section 5(1) or 5(2) of this chapter,[6] a person may not bring or maintain an action against a firearms or ammunition manufacturer, trade association, or seller for:
>
> (1) recovery of damages resulting from, or injunctive relief or abatement of a nuisance relating to, the lawful:
>
> > (A) design;
> >
> > (B) manufacture;
> >
> > (C) marketing; or
> >
> > (D) sale;
>
> of a firearm or ammunition for a firearm; or
>
> (2) recovery of damages resulting from the criminal or unlawful misuse of a firearm or ammunition for a firearm by a third party.

In conjunction with this statute, I.C. § 34-12-3-4(a) provides for dismissal and the award of attorney's fees and costs to the defendant if a plaintiff brings an action under a theory of recovery described above.

[42] KS&E's argument is straightforward: Runnels's claims fit squarely within the plain language of I.C. § 34-12-3-3(2) prohibiting actions against firearms sellers

---

[6] I.C. § 34-12-3-5 provides the following exceptions, which are not applicable in this case:

> Nothing in this chapter may be construed to prohibit a person from bringing or maintaining an action against a firearms or ammunition manufacturer, trade association, or seller for recovery of damages for the following:
> > (1) Breach of contract or warranty concerning firearms or ammunition purchased by a person.
> > (2) Damage or harm to a person or to property owned or leased by a person caused by a defective firearm or ammunition

for "recovery of damages resulting from the criminal…misuse of a firearm…by a third party." Pursuant to this provision, KS&E contends that a firearms seller is immune from liability if a third party's criminal use of the firearm damaged the plaintiff. This is true regardless of whether the firearm was sold lawfully or unlawfully.

[43] I agree with the majority, as would KS&E, that I.C. § 34-12-3-3(1) acts, in part, to bar victims of gun violence from pursuing claims against firearms sellers engaged in lawful sales. This subsection is not applicable here because KS&E is alleged to have engaged in an illegal straw sale.

[44] Subsection (2) of the statute, the one applicable in this case, makes no reference to the lawfulness of the sale. Its focus, rather, is on instances where a firearm is criminally or unlawfully misused by a third party. The majority interprets this subsection as simply "limit[ing] the seller's exposure to liability by barring plaintiffs from holding him accountable for the portion of damages that results from the criminal or unlawful misuse of a firearm by a third party." Slip op. at 15. I believe this is a strained interpretation of the statute and certainly not representative of the statute's plain language.

[45] In relevant part, the statute provides that a person may not *bring* an action against a firearms seller for recovery of damages resulting from the criminal misuse of a firearm by a third party. If a plaintiff brings such an action, the defendant is entitled to dismissal and an award of attorney fees and costs pursuant to I.C. § 34-12-3-4(a). This is a quintessential immunity provision.

[46] The majority, however, relegates it to a recodification of comparative fault principles. That is, according to the majority, subsection (2) makes a gun seller liable for only a portion of the plaintiff's damages – the part attributable to the seller's fault. But that was the law as it existed prior to enactment of the statute. *See City of Gary v. Smith & Wesson Corp.*, 801 N.E.2d 1222 (Ind. 2003).

[47] The *City of Gary* case involved a complaint filed by the City asserting, inter alia, negligence claims against various firearms dealers, distributors, and manufacturers. The trial court dismissed the City's claims for failure to state a claim. The Supreme Court reversed.

[48] Relevant here, the City's complaint generally alleged that the firearms dealers had knowingly sold to illegal buyers through intermediaries in straw purchases. With respect to the negligence claims, the Court addressed the defendants' argument that at the time a gun is used in a crime it is no longer under their control. The Court indicated that this is an issue of proximate cause and comparative fault.

> [L]iability may not be imposed on an original negligent actor who sets into motion a chain of events if the ultimate injury was not reasonably foreseeable as the natural and probable consequence of the act or omission. Under comparative fault, the trier of fact can allocate fault to multiple contributing factors based on their relative factual causation, relative culpability, or some combination of both.

[49] *Id*. at 1244 (citations omitted).  The Court discussed the difficulty of establishing proximate cause in these types of cases.[7]  Despite recognizing that substantial barriers to recovery of any or all of these damages may exist, the Court held that it could not say as a matter of law that no damages were recoverable.  *Id*. at 1244.  The Court concluded:  "Here we have bald allegations of liability and a claim of resulting damages.  That is sufficient to state a claim.  Whether the claim can be substantiated is an issue for another day."  *Id*. at 1245.

[50] I.C. § 34-12-3-3 had not been enacted when the City filed its complaint in 1999.[8]  In 2015, the legislature retroactively amended I.C. § 34-12-3-3 (and the other sections within the chapter), changing its effective date to August 26, 1999 and adding the phrase "or maintain" to the statute to bar people from bringing or maintaining certain actions against firearms sellers.  The legislature also amended I.C. § 34-12-3-4—the statute awarding fees and costs for such actions.  Specifically, another subsection was added applying to actions commenced on or before August 27, 1999 that are subsequently dismissed pursuant to I.C. § 34-12-3-3.  In those cases, the amended statute provides that "no award for

---

[7] Even in the case of unlawful sales, "dealers may not be the sole cause of the injuries from the illegal use of the weapon, and in many cases will not bear any share of the fault." *Id*.  This may be due to the passage of time or a wide variety of intervening circumstances.  "In some cases the fault allocated to the user may overwhelm or even eliminate fault of the seller." *Id*.

[8] The precise date the City filed its case is not clear.  The Supreme Court generally referenced the case being filed in "September 1999", but the date was not important to the disposition of that case. *See City of Gary*, 801 N.E.2d at 1227.  KS&E asserts, without citation, that the complaint was "filed on August 30, 1999 – and was signed and dated on August 27, 1999". *Appellants' Brief* at 6.

attorney's fees or costs incurred shall issue". I.C. § 34-12-3-4. Finally, the legislature amended I.C. § 34-12-3-0.1 to indicate that the chapter also applies to actions filed on or before the original effective date of the statute (April 18, 2001), not just after that date (as it existed prior to the amendment).

[51] The clear purpose of these amendments was to effect a dismissal of the City's case, which lingered unresolved in the trial court after yet another unsuccessful appeal by the gun industry, *Smith & Wesson Corp. v. City of Gary*, 875 N.E.2d 422 (Ind. Ct. App. 2007), *trans. denied* (2009). I agree with KS&E's argument that the 2015 amendment and its connection to the *City of Gary* case, which included claims of unlawful straw sales, "suggests that the General Assembly was keenly aware of the import of the language used in 34-12-3-3 and thus further strengthens the argument that the General Assembly intended what the language in section 34-12-3-3 clearly states." *Appellants' Brief* at 13. Further, if I.C. § 34-12-3-3(2) was intended to be interpreted as a comparative fault provision, there would have been no reason for the legislature to amend the statute to make it retroactively applicable to the *City of Gary* case.

[52] Moreover, I am uncertain how the statute would work under the majority's interpretation. The statute clearly prohibits a plaintiff from bringing certain actions – in this case bringing actions against firearms sellers for "recovery of damages resulting from the criminal…misuse of a firearm…by a third party." I.C. § 34-12-3-3(2). So what actions would be barred under the majority's interpretation of the statute?

[53] In my mind, actions are not defined by comparative fault principles. Rather, they are based on a defendant's alleged liability for a plaintiff's injuries/damages. Whether a defendant is liable generally turns on questions of duty, breach, proximate cause, and harm. A determination regarding apportionment of damages does not occur until these threshold liability issues are determined in favor of the plaintiff.

[54] I.C. § 34-12-3-3(2) looks to the harm alleged and excludes actions against firearms sellers where the plaintiff's injury resulted from the criminal misuse of the firearm by a third party. In this case, Runnels claims that the illegal straw sale was a proximate cause of his injury. Of course, it cannot be disputed that Blackburn and the shooter's actions were also proximate causes. Regardless of the number of bad actors, the injury was the same. A comparative fault analysis would simply apportion the damages "among persons whose fault caused or contributed to causing the loss in proportion to their percentage of 'fault'". *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 109 (Ind. 2002).

[55] Under the plain language of the statute, KS&E cannot be found liable for the alleged harm regardless of its degree of fault. Runnels complains that this interpretation would confer blanket immunity on firearms sellers engaged in the illegal and negligent sale of guns to straw purchasers. As observed by KS&E, the potential for significant criminal liability and regulatory penalties remains a deterrent to discourage firearms sellers from engaging in unlawful sales. Regardless, while the legislature could have – and arguably should have –

carved out an exception for straw purchases in subsection (2), it did not.[9] The policy arguments ably advanced by Runnels and the various amici curiae, no matter how valid, should be directed to the legislature, not this court.

---

[9] Other states have expressly carved out such an exception. *See, e.g.,* Ark. Code § 16-116-202(d)(1) (firearms dealer "may be sued in tort for any damages proximately caused by an act of the…dealer in violation of a state or federal law or regulation"); Colo. Rev. Stat. § 13-21-504.5(4) (same); N.H. Rev. Stat. § 508:21(1)(d) (barred actions "shall not include an action brought against a…seller…convicted of a felony under state or federal law, by a party directly harmed by the felonious conduct").